### In re SCOFIELD CO.

#### Appeal of THOMAS.

(Circuit Court of Appeals, Second Circuit. June 27, 1914.)

#### No. 244.

BANKRUPTCY (§ 349*)—FUNDS—CONTRACT WITH THE UNITED STATES—RESERVE PERCENTAGES—RIGHTS OF SURETY.

Where a contract with the government for the construction of certain public work provided for the retention of percentages until final completion of the work, and the contractor executed a bond to perform the contract, and promptly make full payments to all persons supplying labor and materials in the prosecution of the work, and after performance the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contractor became bankrupt and the surety settled with complainants for labor and materials remaining unpaid, being required to expend an amount larger than the percentages retained by the government, the provision for such reserve fund was for the benefit of the surety, as well as for the protection of the government; and hence the surety was entitled to the amount so retained in preference to the contractor's general creditors without reference to whether the original complainants had an enforceable claim thereon under Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p..2523), authorizing such claimants, under certain circumstances, to sue on the contractor's bond.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 533; Dec. Dig. § 349.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of the Scofield Company. From an order declaring the Fidelity & Deposit Company of Maryland surety for the bankrupt under a bond to the United States, solely entitled to the fund of $46,327.55, held by Seymour P. Thomas as trustee, he appeals. Affirmed.

Burlingham, Montgomery & Beecher, of New York City (Norman B. Beecher, William F. Allen, and Roscoe H. Hupper, all of New York City, of counsel), for appellant.

O'Brien, Boardman & Platt, of New York City (Frank H. Platt and Renwick F. H. Macdonald, both of New York City, of counsel), for appellee.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

ROGERS, Circuit Judge. A contract was made by the United States and the Scofield Company, a New York corporation, for the erection at Hampton Roads, Va., of certain piers and for the dredging of the basin lying between the arms of the piers and for the deepening of the channel of approach to the basin from deep water. To secure the prompt and satisfactory performance of the contract, and in accordance with the act of Congress passed February 24, 1905, c. 778, 33 U. S. Statutes at Large, p. 811 (U. S. Comp. St. Supp. 1911, p. 1071) a bond was duly executed by the Scofield Company in the penal sum of $100,000 with the Fidelity & Deposit Company of Maryland as surety. In this bond the Scofield Company agreed and covenanted to perform the work called for under its contract and in addition agreed to "promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract."

The government agreed to pay the contractor $385,000 for the work on the basis of estimates of work done, a percentage of 10 per centum to be reserved from each payment "until the final completion and acceptance of the work." The contract was entered into in November, 1906, and the work was completed on September 20, 1907, and was accepted by the United States. The Scofield Company (the contractor) went into bankruptcy on September 23, 1907, and on March,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1908, the United States paid over to the receivers of the bankrupt Scofield Company the sum of $45,453.66 and in September of the same year the additional sum of $985, which sums were the reserved percentages which the government had retained in its hands in accordance with the terms of the contract.

The Scofield Company had left unpaid claims of persons who had supplied it with labor and materials in the prosecution of the work it performed for the government under the contract above mentioned, and the amount of these unpaid claims aggregated $139,781.60. The Fidelity Company, in discharge of its obligation as surety for the Scofield Company, satisfied these claims, and the total amount so expended was $85,625, the claimants having assigned their claims to the Fidelity Company on the payment to them of that amount. The Fidelity Company, therefore, insists that, as it was under legal obligations as surety on the bond to satisfy these unpaid claimants, and as it has satisfied them, it is now entitled to assert an equitable lien on the reserved fund of some $46,000, which the United States retained in its hands in paying the contractor, but which, as we have seen, it later turned over to the receivers of the bankrupt, and which is now in the hands of the trustee in bankruptcy. The question thus presented is whether, under the circumstances stated, the surety of the bankrupt contractor who has paid the claims of the laborers and materialmen has any equity in this so-called reserved fund which it can assert to the exclusion of the general creditors.

In 1894 Congress passed an act for the protection of persons furnishing materials and labor for the construction of public works. That act provided that any persons thereafter entering into a formal contract with the United States for the prosecution of any public work should be required to execute the usual penal bond, with the additional obligation that such contractor would promptly make payments to all persons supplying him with labor and materials in the prosecution of the work, and giving a right of action to such person or persons who had not been paid for their labor or materials and authorizing such person or persons to bring suit in the name of the United States for his or their own benefit against the contractor and his sureties; it being also provided that any such action should not involve the United States in any expense. Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523).

In 1895 an additional act was passed which amended the previous act. This act provides that any person furnishing work or materials may intervene and be made a party to any action instituted by the United States on the bond of the contractor, and have his rights and claims adjudicated in such action, but subject to the priority of the claim of the United States, and if suit is not instituted by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials for which payment has not been made is authorized, subject to certain limitations, to bring suit on the bond in the name of the United States. U. S. Statutes at Large, vol. 33, p. 811.

These acts authorize suits upon the *bond,* the suits to be brought in the name of the United States and without expense to the United States. No suit was brought upon the bond given by the Scofield Company, and none was necessary, for the surety on the bond has satisfied the claimants. And in satisfying the claimants there is no doubt but that the surety, the Fidelity Company, has acted under a legal obligation and not as a volunteer.

There is nothing in this record to indicate that the United States withheld the reserved percentages for the benefit of the, subcontractors, unless such intention can be inferred from the language of the bond, which made it the duty of the contractor to pay promptly the subcontractors. The contract itself, in providing for withholding the percentages, does not state or explain the reason, at least so far as this record shows. It simply states that they may be withheld "until the final completion and acceptance of the work." This might seem to indicate that the purpose was simply to secure the government in case the work was not prosecuted promptly and faithfully, for the contract expressly provided that if for any of the reasons stated in the contract the United States found it necessary to terminate the contract, then it might deduct from the reserved percentages which it had withheld whatever sums it expended in completing the contract in excess of the stipulated price, and it allowed certain other deductions to be made. And there was no authority given to pay any subcontractors or deduct from the reserved fund any sums paid to any such persons. Nevertheless when the contract is construed in its entirety and in connection with the obligations imposed by the bond, it will be found that an equity was created in favor of the surety in the reserved fund to which it is the duty of this court to give effect.

In Lawrence v. United States (C. C.) 71 Fed. 228 (1896) decided by Circuit Judge Simonton, the court considered the rights of persons supplying labor and materials to a contractor with the government of the United States, where the government had withheld from the contract price certain sums of money under conditions somewhat similar to those found in the contract made between the United States and the Scofield Company in the case at bar. In that case the court said:

"But these laborers and materialmen have no rights as against the government, rights which can be enforced. There is no privity between them and the government. They are recipients of its bounty, debtors to its good will, objects of its provident care, in whose favor, suo motu, it exercises its right and privilege to withhold the money until their claims are satisfied. Nor have they any specific interest in the money so withheld. It is not necessarily applicable to their claims."

In that case the United States had concluded a contract for building a courthouse and post office for the sum of $76,290. The building had been completed, but the government had withheld the sum of $7,601.06. The reason assigned for withholding this amount was that a number of claims against the contractor for labor and materials supplied in connection with the contract had been filed in the department. The right of the government seemed to be to withhold pay-

ment of the reserved percentages until the contractor made payment of the claims of the laborers and materialmen. And that was what the government in that case did. It insisted that the money withheld should be paid to such persons as came within the favored class, and who had furnished labor and materials. The court was of the opinion that the fund withheld belonged wholly to the contractor, and that no one but the contractor could bring proceedings for the distribution of it. Until he consented that the money should be paid over to the laborers and materialmen the court declared that the laborers and materialmen had not a shadow of interest in the money in the treasury. There was no lien, no quasi lien, no trust. But the same contract came before the Circuit Court of Appeals in Greenville Savings Bank v. Lawrence, 76 Fed. 545, 22 C. C. A. 646 (1896), and was heard before Goff, Circuit Judge, and District Judges Hughes and Morris, the latter writing the opinion. In this case the court held that a person having a contract with the United States could not assign any part of the money coming to him thereunder so as to affect any one but himself, and that the acceptance by the disbursing agent of the United States of an order upon such fund was without validity as against third persons. The court further held that if the contractor failed to pay claims for material and labor, he could not, by an assignment of moneys so withheld, give the assignee any standing to participate in the fund until all labor and material claims had been paid. The contract contained the following stipulation:

"And it is further understood and agreed by and between the parties hereto that it shall be a right and privilege of the said party of the first part to withhold any portion of the sum of money to be paid to said party of the second part under provisions of this contract in the event of the failure of the said party of the second part to promptly make payment to all persons who may supply him with labor and materials in the prosecution and completion of the work herein provided for."

In a suit brought to recover this fund which had been reserved under this stipulation the court said:

"It was a fund withheld under the stipulation of the contract for a particular class of creditors, to which mere assignees of the fund do not belong, and the rights of such assignees, if they have any, must be postponed until the creditors who have a special equity are paid."

In the Greenville Case the right of the government to reserve the fund was, by express language of the contract, as we have seen, to come into existence "in the event of the failure of the said party of the second part to promptly make payment" to the subcontractors. In the case at bar there is nothing to expressly indicate that the reserved fund was to be withheld for subcontractors.

The counsel for the trustee argued before us that the materialmen and laborers had no right, legal or equitable, to the reserved percentages in the hands of the government, and that as the rights of the Fidelity Company could not, in any event, exceed the rights of the materialmen and laborers, it had no claim upon the fund which the government had withheld from the contractors, and which is herein in dispute. He urged upon us that the government was with-

out power to withhold any part of the moneys due to the contractor because of the nonpayment of those to whom the contractor might be indebted. In the brief he submitted he says:

"The learned District Judge apparently thought that the opinion of the Supreme Court in Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547, justified the conclusion that the government was under some equitable obligation to see that the laborers and materialmen were paid. He was unable to explain just what was meant by 'equitable obligation,' but thought that the use of this term, in the opinion of the Supreme Court, necessarily presupposes some sort of property right in the laborers and materialmen in the reserved percentages.' * * * For the present it is enough to say that no one has been able to suggest any principle which in the ordinary use of the term confers upon the laborers and materialmen in the present case any right, legal or equitable, which could be enforced against the reserved percentages in the hands of the government."

It appears to us that the reserved percentages were withheld to secure the performance of the contract.

We are unable, however, to see that any real difficulty exists as to the rules which govern the facts of this case. It is not disputed that the claims which the Fidelity Company has satisfied are claims which it was the duty of the Scofield Company to pay. In making the payments it did the Fidelity Company discharged obligations due from the Scofield Company for the performance of which the Fidelity Company was bound under the obligation of its suretyship. When the Fidelity Company assumed the obligation of suretyship its equity at once commenced with its obligation to see that the Scofield Company duly performed all the obligations which the contract with the government imposed upon it, including its obligations to promptly pay the laborers and materialmen. The Supreme Court in Prairie State Bank v. United States, 164 U. S. 227, 233, 17 Sup. Ct. 142, 41 L. Ed. 412 (1896), held that a stipulation in a building contract for the retention until the completion of the work of a certain portion of the consideration is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed, and that it raised an equity in the fund to be created. In accordance with this doctrine the equity of the Fidelity Company in this reserved fund cannot be successfully questioned. And the fact is quite immaterial that the contract which the Scofield Company made with the government provided simply for the retention of the fund until the completion of the work. A similar provision existed in the contract in the Prairie State Bank Case, but that fact did not prevent the Supreme Court from regarding the reserved fund as withheld for the benefit of the surety, as well as for the protection of the government. The doctrine of that case was reasserted by the Supreme Court in Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 Sup. Ct. 389, 52 L. Ed. 547 (1908). These cases show that the equity of the surety who pays the debts arising under the contract will take precedence of any assignment of funds due from the government made by the contractor. A fortiori the equity of the surety must take precedence of the general creditors.

Decree affirmed.