**In re L. H. DUNCAN & SONS.**

**Appeal of MARYLAND CASUALTY CO.**

No. 7862.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 7, 1942.

Decided April 14, 1942.

James M. McCandless, of Pittsburgh, Pa., for appellant.

Frank W. Stonecipher, of Pittsburgh, Pa. (Stonecipher & Ralston, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and JONES, Circuit Judges.

BIGGS, Circuit Judge.

On January 5, 1938, the partners, now bankrupt, entered into a written contract with the Commonwealth of Pennsylvania for the construction and improvement of a section of state highway. The contract provided, "The contractor further covenants and agrees that all of said work and labor shall be done and performed in the best and most workmanlike manner and that prompt payment will be made in full for labor and material used in the work."

At the same time the partners made a written application to Maryland Casualty Company, the appellant, for the bonds required by statute. See Highways and Bridges, 36 P.S. § 142. In this application the partnership agreed to indemnify the appellant for any liability which it might incur under the bonds. The application provided in part: "In the event of claim or default under the bonds herein applied for, or in the event the undersigned shall fail to fulfill any of the obligations assumed under the said contract and bonds * * * executed for us or at our instance, and request all payments due or to become due under the contract covered by the bonds herein applied for, shall be paid to the company * * * and this covenant shall operate as an assignment thereof. * * * The company shall * * * be subrogated to all rights, properties and interest of the undersigned in said contract * * *." At the same time the partnership and Maryland Casualty Company executed and delivered to the Commonwealth of Pennsylvania the two bonds required by law, viz., a contract bond guaranteeing performance of the contract and a bond for the payment of materialmen and laborers. Thereafter the partnership entered upon the performance of the work required by the contract and completed it in September, 1938.

During the progress of the work the partnership contracted debts for materials supplied and labor performed in the prosecution of the construction. On September 28, 1938, the partners filed a voluntary petition in bankruptcy and were adjudicated bankrupts. Thereafter the appellant, as surety, paid the claims for materials furnished and labor performed in the prosecution of the work, and, obtaining assignments of proofs of debt from the individuals paid, filed these claims in the bankruptcy proceeding.

When the partners were adjudicated bankrupts the Commonwealth of Pennsylvania had not paid the sum of $6,912.27 which was the balance due on the contract between the Commonwealth of Pennsylvania and the partners. The claims of laborers and materialmen paid by the appellant exceeded this amount. The sum unpaid was claimed both by the partnership's trustee in bankruptcy and by the appellant. The trustee and the appellant thereupon entered into a written agreement providing that Pennsylvania should pay the sum of $6,912.27 to the trustee without prejudice to the right of either the trustee or the appellant to claim the fund. Shortly thereafter the appellant executed the release of final payments which is required by Pennsylvania before payments will be made on account of construction of a state highway and the Commonwealth paid to the trustee the sum referred to. Maryland Casualty Company then filed a petition with the referee claiming the fund. After hearing the referee dismissed the petition without prejudice and ordered the trustee to file an account. At the hearing upon the trustee's account the appellant again set up its claim to the fund. The referee disallowed the claim and found that the appellant was entitled to priority only in the matter of wage claims paid by it and assigned to it in the sum of $2,159.28, and that by the payment of the sums due to the materialmen the casualty company got the status only of a general creditor. Upon petition for review, the court below affirmed the referee's decision. An appeal was taken to this court.

Two points are raised for our determination. The appellant claims that it is entitled to the fund by way of subrogation under the contract between the Commonwealth and the bankrupts and also by reason of the equitable assignment contained

in the application for the bonds which we have heretofore quoted.

■ Pennsylvania law governs the case. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The difficulty is to fit the facts at bar into the pattern of the decisions of the Supreme Court of Pennsylvania. The appellee contends that the case is ruled by DuBois v. United States Fidelity & Guaranty Company, 341 Pa. 85, 18 A.2d 802, and Sundheim v. Philadelphia School District, 311 Pa. 90, 166 A. 365. The appellant contends that it is governed by Lancaster County National Bank's Appeal, 304 Pa. 437, 155 A. 859, 861.

In the Sundheim case there were construction contracts by reason of which the contractor undertook to build certain buildings in accordance with plans and specifications, but did not obligate itself to the School District to pay materialmen and laborers. The contractor executed construction bonds conditioned for the completion of the work. These bonds were for the benefit of the owner, the School District. The contractor executed other bonds to secure the payment of labor and materialmen in compliance with the provisions of the Act of May 6, 1925, P.L. 546, 53 P.S. § 521. The Supreme Court of Pennsylvania held that the surety was paid fully for the work which it had had to perform in order to complete the contract and that there was no obligation in the construction bonds or the construction contracts running to the owner to pay labor and materialmen. The court thereupon concluded that the provisions of the Act of May 6, 1925 were not a part of the construction contracts and the failure of the contractor to pay labor and materialmen was not a breach of the construction contracts. Justice Kephart said, at page 368 of 166 A.: "The acts simply required an 'additional bond' for the protection of labor and materialmen and it was under that obligation the surety was required to pay. The contractor's obligation to pay labor and materialmen came through the agreements between the contractor and such claimants. Therefore, when the surety paid these claims, without other facts (Lancaster County National Bank's Appeal, supra), it can predicate no right through the construction contract with the owner, or the bond given for that construction, or the statutes referred to, to any part of the funds in the owner's hands due under the construction contract."

The court would not permit subrogation by the surety to the contractor's claim to the unpaid balance due on the contract and held that the contractor's receiver was not entitled to prevail against the contractor's creditors.

Contrasting the federal cases which follow a different rule, Justice Kephart stated, at page 367 of 166 A.: "Under federal statutes a single bond is required which must provide for the completion of the contract and the payment of labor and matrialmen. 40 U.S.C. § 270 (40 U.S. C.A. § 270), 36 Stat. 1167. It has been held by federal courts that there is a direct contractual obligation to the government as a party to the contract, binding on the contractor and surety, to pay labor and materialmen. Consequently, when the contractor fails to pay labor and materialmen, it is tantamount to a breach of its contract with the United States government. When this occurs and the surety pays the labor and materialmen, it stands in the position of a surety completing a contractual obligation of a defaulting contractor and performing an equitable duty to the United States. It is therefore entitled to subrogation to the rights of the United States in the fund. Subrogation does not arise through the contractor, but from the government's rights. Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fid. & Guar. Co. of Baltimore, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; In re Scofield Co. [2 Cir.], 215 F. 45. In Pennsylvania, where our statutes and the facts coincide with the cases decided by the federal courts, we are in harmony with those decisions as illustrated by Lancaster County National Bank's Appeal, 304 Pa. 437, 155 A. 859, 861."

In the DuBois case the contractor, Feraco, entered into a written contract with the Commonwealth of Pennsylvania and the City of Scranton for the construction of a highway. From the tenor of the opinion we think it can be assumed safely that the contract did not contain a provision calling for the payment of laborers and materialmen, for the court said: "His [the contractor's] failure to pay for materials and labor was not a breach of his construction contract." [341 Pa. 85, 18 A.2d 804.] The contractor, however, gave bond in the usual form secured by United States Fidelity & Guaranty Company for the completion of the construction contract

and additional bond for the payment of labor and materials. The Supreme Court of Pennsylvania found that Feraco was never in default on his contract, though it was necessary for him to procure another company to finish his work for him. The court there held that Feraco's failure to pay for materials and labor was not a breach of his construction contract. Justice Drew stated, at page 804 of 18 A.2d: "In short, the Commonwealth and the City retained no rights against Feraco to which defendant [the surety] could have been subrogated." Justice Drew went on to say that it was true that payment for labor and materials by the defendant did give rise to a right of indemnity against Feraco but the sole question involved was whether the surety's rights to the sum unpaid upon Feraco's contract was superior to that of Feraco's trustee in bankruptcy. The learned Justice distinguished the decisions of the Federal courts upon the precise basis stated by Justice Kephart in the Sundheim case. The court held that the surety was not entitled to preference against the general creditors of the contractor upon any doctrine of subrogation while admitting that the surety had a general claim against the estate of the bankrupt.

In the Appeal of Lancaster County National Bank it appears that the contractor gave a single bond conditioned for the completion of the highway in accordance with a contract (for the construction of a part of a state highway which was about to be executed with the Commonwealth of Pennsylvania) and that the contractor would "well and truly pay for all material furnished and labor performed in and about the construction of said highway." The contract when executed provided not only for the proper performance of the work but also, to employ the language of Justice Simpson, at page 860 of 155 A.: "* * * that the contractor 'shall not assign * * * any right to any moneys to be paid him hereunder * * * without the consent in writing of the Secretary of Highways,' and that 'the Secretary will withhold the payment of any semifinal or final estimate, pending the receipt of the "Application for Release of Bond,"'" which application (the required form being attached) further stated that it would

not be granted until 'all claims for labor and materials (incurred in the performance of the contract) have been satisfactorily settled.' The condition of the bond itself also required proper performance, payment of workmen and materialmen, and the filing of the same form of application for release of bond."

After the contractor had performed much of the work of construction it applied to Lancaster County National Bank for a loan of $5,000. The bank took from the contractor a power of attorney to receive the semifinal payment upon the contract when due from the Commonwealth and made the loan. The Supreme Court of Pennsylvania assumed, for the purposes of the appeal, that the execution of this power of attorney operated as an assignment by the contractor to the bank of whatever sum the Commonwealth thereafter would be required to pay the contractor under the contract subject to the rights of laborers and materialmen and those standing in their shoes to be paid in full. Before either the semifinal or final payment was made, the contractor became insolvent and a receiver was appointed for its estate. The question before the court was whether the bank or the surety was entitled to the unpaid balance of the contract price. The Supreme Court of Pennsylvania held that the surety was entitled to the fund.

As we understand the reasoning of the Supreme Court its ruling was to the effect that the bank was bound to take notice that under the contract the contractor could not get the Commonwealth's "estimate" upon which payment under the contract depended until all claims for labor and materials had been satisfactorily settled. The Supreme Court held that the bank knew or was bound to know that the statute (Act of May 16, 1921, 36 P.S. § 142), the contract and the bond made the rights of the materialmen and laborers paramount to those of the contractor, citing the leading case of Henningsen v. United States Fid. & Guar. Co. of Baltimore, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547. The Supreme Court of Pennsylvania declared that the facts in the Henningsen case were precisely similar to those in the Lancaster County National Bank case [1] and that in view of this fact the law of

---

[1] "Under precisely similar circumstances to those appearing in the instant case, the point here in dispute was decided in favor of appellee's contention, in Henningsen v. United States Fidelity & Guaranty Co. of Baltimore * * *."

644

Pennsylvania would follow the decision of the Supreme Court of the United States in the Henningsen case.[2] Justice Simpson went on to declare that the case of Mock, Trustee, v. Bechtel, 101 Pa.Super. 181, was not in point because the construction contract there involved " 'contained no clause, covenant or provision for the protection of laborers or material men furnishing work or materials in the erection of the bridge; nor was there any statutory requirement that it should do so.' "

In view of what we have stated we think we must reach the conclusion that the case at bar on its facts is controlled by the Lancaster Bank case rather than the Sundheim and DuBois cases. In the contract at bar there was an express provision that the partners should make prompt payment in full for labor and materials. There was a breach of the covenant in this respect by the contractors and the surety made this breach good as it was required to do under its bond for the payment of materialmen and laborers. The fact that this bond was a separate obligation from the construction bond does not seem to us to be important though the appellee lays emphasis upon this fact. We conclude that under the law of Pennsylvania, putting to one side all questions which might arise by reason of the ad-judication in bankruptcy of the partners, the surety was entitled to subrogation to the unpaid balance upon the contract.

Does the fact that the partners were adjudicated bankrupts prior to the time when the surety paid the laborers and materialmen and thus secured release of the balance of the fund from the Commonwealth of Pennsylvania, strike down the surety's right of subrogation? While the trustee in bankruptcy stands in the position of a judgment creditor armed with process by virtue of Section 70, sub. c, of the Bankruptcy Act as amended, 11 U.S.C.A. § 110, sub. c, none the less as to property or a chose-in-action held adversely to him the trustee's standing is no higher than that of the bankrupt. The rights of the surety under the circumstances of the case at bar, however, are paramount to those of the contractor, according to Justice Simpson's statements made in the Lancaster County National Bank case, made so by the statute, contract and bond. The surety is subrogated in the case at bar to the rights of the laborers and materialmen and not to those of the contractor. It follows that the surety's right to subrogation in the fund is paramount to the right of the trustee in bankruptcy to that fund.

The judgment of the court below is reversed.

---

[2] Henningsen entered into a contract with the United States to construct buildings. United States Fidelity and Guaranty Company was the surety for the contractor on the contract, which provided not only that the contractor should construct the buildings but that he should pay all persons supplying labor and material in the prosecution of the work. Henningsen did not make these payments and the surety company was compelled to and did make them. The question presented for the determination of the Supreme Court was: Was the equity of the surety superior to that of a creditor who had loaned money to the contractor. The Supreme Court stated [208 U.S. 404, 28 S.Ct. 391, 52 L.Ed. 547], "We think it is. It [the surety] paid the laborers and materialmen and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supply men were paid. It did this not as a volunteer, but by reason of contract obligations entered into before the commencement of the work.", citing Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412.