## MARYLAND CASUALTY CO. v. CITY OF PITTSBURGH et al.

### Civil Action No. 1777.

District Court, W. D. Pennsylvania.

Aug. 25, 1943.

J. M. McCandless, of Pittsburgh, Pa., for plaintiff.

William Alvah Stewart, City Sol., and Thomas E. Barton, Asst. City Sol., both of Pittsburgh, Pa., for City of Pittsburgh.

John E. Winner and Floyd V. Winner, both of Pittsburgh, Pa., for West End Bank.

GIBSON, District Judge.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

#### Findings of Fact.

The parties herein have filed a Stipulation of Facts, which is now referred to, made part hereof and adopted as the findings of the Court.

#### Conclusions of Law.

I. The complainant, Maryland Casualty Company, is entitled to judgment in its favor for the final payments under the contract between Tavares Brothers and the City of Pittsburgh for the repaving of a street, in amount of $4,126.17.

II. The Maryland Casualty Company, under its suretyship contracts herein, is entitled to claim subrogation to the rights of the City of Pittsburgh and of persons supplying labor or materials.

III. The subrogation rights of the Surety, which has completed the work of the contractors for whom it has furnished bond, and has paid debts of the contractors for labor and materials pursuant to its bond to secure such payments, date from the execution and delivery of the bonds, and not from the date of completion of the work or of the payments for labor and materials.

IV. The subrogation rights of the Surety herein are superior to, and entitled to priority over, the claims of the Bank which loaned moneys to the contractors, upon assignments by said contractors of amounts due, or to become due, to them.

V. Judgment must be entered against the West End Bank, interpleaded defendant.

#### Discussion.

On August 30, 1939, Tavares Brothers entered into a contract with the City of Pittsburgh for the repaving of Maytide Street. The contractors were required to give two bonds to the City as required by statutes, one for the performance of the work and the other for the payment of materials furnished and labor supplied in the execution of the work. The main contract with the City made these bonds part of the contract. By the application of the contractors to the Surety Company for the bonds (not filed with the bonds as part of the contract), all percentages retained by the City in event of default by the contractors were assigned to the Surety. The contract signed on behalf of the City and by the contractors gave the City the right to terminate the employment of the contractors if the latter failed or refused to prosecute and terminate the work within the specified time, or if they should fail to make prompt payment to persons supplying labor or materials for the work. It also provided that the contractors should not receive any further payment until the work is finished.

The contractors failed to finish the work and the Surety, upon demand of the City, completed it at an expense of $528.36, and, in addition, paid bills of the contractors for labor and materials in the amount of $10,101.81.

After the completion of the work the City of Pittsburgh determined that $4,126.17 remained in its hands out of the contract price thereof. Of this amount the West End Bank (of Pittsburgh) claimed $3,000 upon an assignment to it by the contractors, under date of October 5, 1939, of all monies due, or that may become legally due them under the contract for repaving of Maytide Street, and the loan to contractors of $3,000 on December 15, 1939, upon the note of the contractors with the said assignment as collateral. The Maryland Casualty Company, the Surety, also made demand upon the City, its claim being for the entire amount of $4,126.17 remaining in the possession of the City and due upon the contract.

The Maryland Casualty Company has filed its action in this court against the City of Pittsburgh, wherein it claims the entire fund of $4,126.17 under its claim of subrogation to the rights of the contractors and, as well, under the assignment to it, by its application for bonds, of monies due the contractors by the City in event of default by the contractors and expenses thereby incurred by the Surety. The City, in turn, has admitted its liability for that amount upon the Maytide Street contract, and has caused the West End Bank to be interpleaded in the action for the determination of the respective claims of said West End Bank and the Maryland Casualty Company to the fund in question. The West End Bank has filed its answer to the complaint of the Maryland Casualty Company, wherein it claims $3,000 of the fund pursuant to the contractors' assignment to it of December 15, 1939.

Section 26 of page 13 of the contract is as follows: "The City may withhold from

the contractor in addition to retained percentages such an amount or amounts as may be necessary to pay just claims for labor and services rendered and materials furnished in or about the work."

■ In view of this section the City might have retained the entire fund of $4,126.17, and devoted it to payment of labor and material men, and then made claim against the Surety Company, under its bond guaranteeing payment for materials furnished and labor performed, in the amount of $5,975.64, instead of the amount actually received, $10,101.81. True, the City did not thus apply the fund in its hands, but the ability to make such application throws a strong light upon the equities in the instant matter. By the contract the West End Bank had notice that the claims of material men and labor had precedence over the claims of the contractors, or general claims upon their assignment of their claims, and when it made a loan to the contractors upon the contractors' assignment it knew that its claim was inferior to those of material men and labor. It follows that one not a volunteer, but a surety compelled by its bond to pay claims for materials furnished and labor supplied, is entitled under its right of subrogation to the precedence owned by the claims paid.

The facts in the instant case are practically parallel with those in Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, in which the surety, after default, had completed the work and claimed the balance held by the United States. The Prairie State National Bank, while the contractor was still on the job, had loaned money to him which it claimed was used by him on the contract, and had taken an assignment from him. It also claimed the fund. In the instant case it does not satisfactorily appear that any of the money loaned by the Bank had been used upon the work, but this fact is immaterial. As in the instant case, the assignment to the Prairie State Bank antedated the date of the surety's payments, but the court, by Mr. Justice White, held that the surety's subrogation claim dated back to the original contract and not from the date of his payments.

■ The present action is to be ruled by Pennsylvania law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. It will be noted, in considering Prairie State Nat. Bank v. United States, supra, that that decision was approved and formed the basis of the decision in Wells v. City of Philadelphia, 270 Pa. 42, 112 A. 867, 868, in which it was held: "* * * The surety's relation, through compulsion (default), dates even with the owner's relation. From this fund and the unpaid contract price it is entitled to sufficient to save itself from loss on its suretyship engagement; nor can the contractor, by assignment or otherwise, deprive it of this right. * * *"

In Re L. H. Duncan & Sons, Bankrupts, 3 Cir., 127 F.2d 640, 642, opinion by Biggs, C. J., the Pennsylvania authorities upon our present subject matter are exhaustively reviewed. The contract in that case was between the surety and the trustee in bankruptcy. The surety, under its material and labor bond, had paid certain obligations of the contractor. The following is quoted from the opinion: "It has been held by federal courts that there is a direct contractual obligation to the government as a party to the contract, binding on the contractor and surety, to pay labor and materialmen. Consequently, when the contractor fails to pay labor and materialmen, it is tantamount to a breach of its contract with the United States government. When this occurs and the surety pays the labor and materialmen, it stands in the position of a surety completing a contractual obligation of a defaulting contractor and performing an equitable duty to the United States. It is therefore entitled to subrogation to the rights of the United States in the fund. Subrogation does not arise through the contractor, but from the government's rights, Prairie State Nat. Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fid. & Guar. Co. of Baltimore, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; In re Scofield Co., 2 Cir., 215 F. 45. In Pennsylvania, where our statutes and the facts coincide with the cases decided by the federal courts, we are in harmony with those decisions as illustrated by Lancaster County Nat. Bank's Appeal, 304 Pa. 437, 155 A. 859, 861."

See also Lancaster County Nat. Bank's Appeal, 304 Pa. 437, 155 A. 859, approved and quoted in L. H. Duncan & Sons, supra. The Lancaster County National Bank case was a contract between a bank, which had loaned the contractor money upon his assignment of moneys due or to

462

become due, and the surety which had paid labor and material claims.

It seems plain that the complainant Surety Company is entitled to the entire contract fund in the hands of the City of Pittsburgh, and an order for judgment to that effect will be filed.

### Order for Judgment.

And now, the above entitled cause having come on to be heard, upon consideration thereof, it is ordered, adjudged and decreed that judgment therein be entered against the West End Bank, interpleaded defendant, and in favor of the Maryland Casualty Company, complainant, in the sum of four thousand one hundred twenty-six and 17/100 ($4,126.17) dollars.