**CONTINENTAL CASUALTY CO. et al. v. CITY OF PITTSBURGH.**

No. 3545.

District Court, W. D. Pennsylvania.

Nov. 15, 1946.

Dickie, Robinson & McCamey, of Pittsburgh, Pa., for plaintiff.

John M. Marshall, Asst. City Sol., of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

The facts are fully stated in the Findings of Fact. From the facts found, it appears that the Middle West Construction Company entered into a written contract with the City of Pittsburgh, January 29, 1939, for the construction of a relief sewer in the Columbus Avenue Drainage Basin.

The contract provides, inter alia, that the contractor furnish all work and materials necessary for the performance of the contract and promptly pay for the same. It also provides for periodical payments by the City to the contractor with the right in the City to retain ten per cent until completion and acceptance; that in event of default by the contractor to make prompt payments for labor and materials, the City may complete the work and pay the balance to the contractor; if the cost of completion is in excess of the balance in the hands of the City, it is given the right to charge the same to the contractor and the sureties on its bonds; the City also has the right to withhold payments until specified evidence has been furnished to it of payment by the contractor for labor and materials; also that the contractor furnish two bonds, which were made a part of the contract; one, a performance bond; the other, a labor and material bond.

These bonds were furnished by the Continental Casualty Company and the Massachusetts Bonding and Surety Company, Plaintiffs. They provide for faithful performance by the contractor of the terms of the contract and for the payment of labor and materials furnished. The Contractor assigned to the plaintiffs, all monies due it under the contract in event of its default.

The contractor entered into performance of the aforesaid contract with the City and made default in payment for labor and materials. The City notified the contractor of its default February 13, 1941, and called upon plaintiffs, the sureties, to complete said contract. Thereafter, the contract was completed and the cost of said completion, $25,861.21, was paid by the plaintiffs, the surety companies. There is a balance under the contract in the possession of the City of $23,834.13. It is conceded that plaintiffs are entitled to judgment for this amount, unless the City is entitled to the set off averred in its counterclaim.

On March 29, 1938, the City entered into a contract with the Middle West Construction Company for the construction of a relief sewer in the Spring Garden Drainage Basin. The Standard Accident Insurance Company became surety on the performance and labor and material bonds, covering said contract. Work was completed October 22, 1938. The City paid the contractor the amount found to be due it. In 1941, the City found that the sewer had not been constructed in accordance with the contract. Neither the City nor the contractor has done the work required to complete said sewer. The City, in 1944, estimated that the cost thereof would be $18,240.30, which is ten per cent to fifteen per cent higher than the cost would have been in 1941. This is the set off which it claims. Plaintiffs contend that the City is not entitled to this set off, as against the balance in the hands of the City under the Columbus Avenue sewer contract. The question is whether the City's claim of set off should be sustained or not.

The City contends that the assignment made by the contractor of monies in the hands of the City to the plaintiffs in event of default by the contractor was not effective to defeat defendant's right of set off, also that plaintiffs have no right of subrogation. Plaintiffs contend that the City is not entitled to set off against the balance in its hands under the present contracts, a claimed indebtedness by the City against the contractor under an earlier contract. Plaintiffs also claim that they are entitled to subrogation to the unpaid balance in the hands of the City under the present contract.

In the case: in Re L. H. Duncan & Sons, Appeal of Maryland Casualty Co., 3 Cir., 127 F.2d 640, the contractors entered into a written contract with the Commonwealth of Pennsylvania for the construction and improvement of a section of a State Highway. The contract provided that the contractors would make prompt payment in full for labor and materials used in the work. The contractors were required to furnish performance and labor and material bonds. The contractors made an assignment of all monies due them from the Commonwealth of Pennsylvania in event of default. The contractors performed the contract and defaulted in payment for labor and materials. The surety paid these claims and made claim for the money in the hands of the Commonwealth, which, by agreement, had been paid to the Trustee of the contractors, in bankruptcy; the amount being $6,912.27. The payment by the surety was in excess of that amount. The surety claimed that it was entitled to the fund aforesaid by subrogation, and also by reason of the equitable assignment which the contractors made to the surety in event of default by the contractors.

The Court, in an opinion by Judge Biggs, stated that the case was governed by Pennsylvania law. The Court reviewed the Pennsylvania cases, including DuBois v. United States Fidelity & Guaranty Company, 341 Pa. 85, 18 A.2d 802, Sundheim v. Philadelphia School District, 311 Pa. 90, 166 A. 365, and Lancaster County National Bank's Appeal, 304 Pa. 437, 155 A. 859, and in conclusion stated [127 F.2d 644]:

"In view of what we have stated we think we must reach the conclusion that the case at bar on its facts is controlled by the Lancaster Bank case rather than the Sundheim and DuBois cases. In the

contract at bar there was an express provision that the partners should make prompt payment in full for labor and materials. There was a breach of the covenant in this respect by the contractors and the surety made this breach good as it was required to do under its bond for the payment of materialmen and laborers. The fact that this bond was a separate obligation from the construction bond does not seem to us to be important though the appellee lays emphasis upon this fact. We conclude that under the law of Pennsylvania, putting to one side all questions which might arise by reason of the adjudication in bankruptcy of the partners, the surety was entitled to subrogation to the unpaid balance upon the contract. * * *

"The rights of the surety under the circumstances of the case at bar, however, are paramount to those of the contractor, according to Justice Simpson's statements made in the Lancaster County National Bank case, made so by the statute, contract and bond. The surety is subrogated in the case at bar to the rights of the laborers and materialmen and not to those of the contractor. It follows that the surety's right to subrogation in the fund is paramount to the right of the trustee in bankruptcy to that fund."

This case is like the present case in that the contract provides that the contractor shall make prompt payment of claims for labor and materials; that the contractor failed to make such payments; that the surety paid for the same and the surety had an assignment from the contractor for monies due the contractor in event of his default. The decision was in favor of the surety.

In Wells v. City of Philadelphia, 270 Pa. 42, 112 A. 867, 868, the plaintiff, a surety company, was a surety on bonds for the performance of contract and for the payment of labor and material. The contractor did not complete the contract but the surety, on demand, did at a cost exceeding the balance in the hands of the City. The question involved was whether the plaintiff, a surety company, was entitled to the balance in the hands of the City. It was held that it did have that right.

The Court in an opinion by Justice Kephart said: " * * * When default on the contract was declared against Wells and those under him, the surety was called upon to complete the contract in accordance with the obligation assumed by it with the city; the surety, on electing to complete, stood in a new relation to the contract. It was in direct relation to defendant as a party contracting to complete the work, becoming so on the contractor's default. In agreeing to finish the work, it exercised its rights under the contract and bond, stepping into the shoes of the contractor, operating under the contract as though a party originally alternately bound by its terms. See Philadelphia v. Harry C. Nichols Co., 214 Pa. 265, 273, 63 A. 886. It was not a new engagement, but a continuation of the old one, wherein the surety succeeded to all rights of the contractor under the contract, as well as liabilities to the owner thereunder. As to any money retained, the surety then stands to that fund in the same position as the owner of the property to which the contract relates. The surety's relation, through compulsion (default), dated even with the owner's relation. From this fund and the unpaid contract price it is entitled to sufficient to save itself from loss on its suretyship engagement; nor can the contractor, by assignment or otherwise, deprive it of this right. * * *."

In Maryland Casualty Co. v. United States, 100 Ct.Cl. 513; Id., D.C., 53 F. Supp. 436, the contractor defaulted in his contract with the United States and as a result the surety on his bond was required to make payment of monies due materialmen and laborers. The surety sought in that proceeding to recover money due the contractor, in the possession of the United States. The United States set up a set off by reason of taxes and other debts due it from the contractor. The question arose whether the United States had a right to such a set off. The Court of Claims held that it did not have the right.

In the opinion of Judge Madden, it is said:

"Suppose a contractor defaults, at some stage, early or late, in performance. The surety elects to complete performance in

order to reduce its liability. It secures another contractor and enters into a contract with him for completion of the work. The work is completed. Then the Government says that the original contractor owed it more on other accounts than the unpaid contract price, hence the surety will be paid nothing, though it did some or most of the work covered by the original contract. If, in the same situation, the surety had not elected to complete the work, the Government had finished the job itself, the surety would have been obliged to pay only the difference between the actual cost of completion and the part of the contract price which had not been paid the original contractor before his default.

"In the first situation suggested above, the surety would have paid the original contractor's taxes or other debts to the Government. In the second, it would not. We think that in no case is it intended that the surety transaction should work out in such a way that the surety has paid the contractor's taxes or unrelated debts to the Government."

In Sundheim v. Philadelphia School District et al., 311 Pa. 90, 166 A. 365, 368, the question involved was the right of a surety, who paid the claims of labor and materialmen, to funds in the hands of the owner as against the claims of other creditors. The decision was adverse to the surety on the ground that the surety did not have an assignment from the contractor. The contract in that case differed from the contract in the present case in that it did not require the contractor to make payment for labor and materials. The Court stated "there was no obligation in the construction bonds or the construction contracts to pay labor and materialmen." The contract in that case was different from the contract in the present case in that the contractor made no assignment to the surety in event of default by the contractor. The Court, on this point, stated in its opinion: (311 Pa. at page 103, 166 A. at page 370): "We have no doubt that an express executory contract in writing whereby the contracting parties sufficiently indicate an intention to make some particular property or fund therein described the security for a debt or other obligation creates an equitable lien on the property so indicated (Hurley v. Ashbridge, 55 Pa. Super. 523); but there must be such an identification of the fund and such a transfer of it as would clearly indicate that intention. There is nothing in the contract which measures to this requirement."

The Court stated in regard to subrogation (311 Pa. at pages 99 and 100, 166 A. at pages 369): " * * * Assuming that the construction obligation was a completion bond and the surety had been called in to complete (which it had not been in this case), if the surety completed the building it would have been entitled to be reimbursed for its outlay in completing the contract whatever that outlay may have been. * * *." (311 Pa. at page 101, 166 A. at page 369) "The subrogation rights extend to the rights of the party whose claim the surety is compelled to pay. 'When a party is required to pay a debt for which he has made himself legally liable, as surety, for which another is liable, as principal, and which that other in good conscience ought to pay, such payment operates to invest the party paying with the creditor's rights and remedies against the principal debtor. * * *.'"

In City of Philadelphia, to Use of Warner Co., v. National Surety Corporation (National Surety Corporation v. City of Philadelphia), 3 Cir., 140 F.2d 805, 807, an action was brought for the use of Warner Company, a subcontractor, against the National Surety Corporation, surety on a paving contract by the Municipal Construction Company and the City of Philadelphia, to recover for material furnished, which entered into the paving contract between the Municipal Construction Company and the City of Philadelphia. The National Surety Corporation, defendant, summoned the City of Philadelphia as a third-party-defendant. The City moved for the dismissal of this claim against it on the ground that it did not set forth a cause of action. The proceeding was under Rule 14(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In this case, it appeared that Municipal was a defaulting contractor with the City of Philadelphia, prior to 1938. In the year mentioned, the City entered

into five more contracts, with the Municipal Construction Company for paving, etc., of city streets. Municipal furnished performance bonds. The National Surety Corporation became surety thereon. Upon completion of the work by Municipal, the City withheld $13,281.47 to reimburse it by reason of default made by Municipal on its prior contracts. Warner Company furnished materials for the 1938 contracts. Municipal did not pay Warner Company $12,479.94, which was due it for said materials. Demand was made on the National Surety Corporation, surety on Municipal's bond, who refused to pay the same. Thereupon, Warner Company, subcontractors, brought suit in the name of the City of Philadelphia to its use against the National Surety Corporation, to recover upon the additional bonds. Municipal, the contractor, made assignment to National Surety Corporation, the surety on its bonds, of monies due Municipal in event of default. National Surety Corporation claimed the right to recover against the City for several reasons; one of them being the assignment by Municipal, the contractor, to the City. The Court, in its opinion, stated that this proceeding being under Rule 14(a) of the Rules of Civil Procedure—"It follows that in order for National Surety to avail itself of the benefits of the rule it is necessary that the City be liable either to National Surety or to the Warner Company for all or part of Warner Company's claim against National Surety.", and in disposing of this question, the Court, in an opinion by Judge Biggs said:

"As we have stated Warner Company was a materialman who furnished materials to the five jobs covered by the contracts let to Municipal on or after September 30, 1938. Under the law of Pennsylvania a municipal corporation such as the City of Philadelphia has no obligation to pay materialmen. A municipality is liable to the contractor but not to a subcontractor, a materialman or a laborer. City of Philadelphia v. Stewart, 201 Pa. 526, 532, 51 A. 348, 350; City of Philadelphia to Use of McFarland v. McLinden et al., 205 Pa. 172, 176, 54 A. 719, 720; Lesley v. Kite, 192 Pa. 268, 43 A. 959. The 'ad-ditional' bonds covering the five contracts were executed by National Surety pursuant to the provisions of the two Pennsylvania statutes of June 22, 1931, P.L. 880 and P.L. 881, 53 P.S.Pa. §§ 523 et seq. and 525 et seq., as well as of an ordinance of the City of Philadelphia approved July 11, 1932, Ordinances of the City of Philadelphia and Opinions of the City Solicitor, 1932, p. 109. It is well settled that such so-called 'additional' bonds are for the benefit of materialmen and laborers. City of Philadelphia v. Stewart, supra; City of Philadelphia to Use of McFarland v. McLinden et al., supra. Moreover, if the surety upon an 'additional' bond pays the claim of materialmen it can acquire no right of subrogation against the municipality for the surety's rights rise no higher than those of the materialman who himself has no right to money in the owner's hands as retained percentages or a claim against the owner. DuBois v. United States Fidelity & Guaranty Co., 341 Pa. 85, 90–93, 18 A.2d 802, 804, 805. National Surety therefore cannot bring itself within the provisions of Rule 14(a). Even if it pays the claims due to Warner Company it acquires no right against the City of Philadelphia by subrogation. It could receive no more by the assignments which Municipal assertedly executed in its favor, for all that Municipal gave or could give to National Surety by these assignments was its right to collect from the City the sum withheld. This could not include Warner Company's claim against National Surety or any part of it. Thus, on any theory, National Surety fails to meet the test laid down by Rule 14(a)."

The Court held that the City was not liable to the National Surety Corporation, surety on the contractor's bonds, or to Warner Company, the subcontractor, for material furnished for all or part of Warner Company's claim.

In Maryland Casualty Company v. City of Pittsburgh, et al., D.C.W.D.Pa., 51 F. Supp., 459, 461, the contractors, Tavares Brothers, entered into a contract with the City for the repaving of a street. They furnished both performance and labor and material bonds with the plaintiff as surety. The contract with the City made the bonds

a part of the construction contract. The contractor assigned to the surety all percentages retained in event of default by the contractor. The construction contract gave the City the right to terminate the contract for failure of performance or to pay for labor and material and provided also that the contractor should not receive further payments until the work was finished. The contractor failed to perform the contract. The surety, on demand, completed the contract and paid for labor and materials. The contractor also made an assignment to a bank of all monies due him under the contract as security for a loan. The contract in Section 26 provided that the City may withhold from the contractor, in addition to retained percentages, such an amount as may be necessary to pay the claims for labor and materials furnished, and that the City shall have the right to apply such retained amount to the payments of such claims. This Court held that the surety was entitled to priority in payment over the bank which had received the assignment aforesaid. Judge Gibson, in his opinion, stated: "In view of this section the City might have retained the entire fund of $4,126.17, and devoted it to payment of labor and material men, and then made claim against the Surety Company, under its bond guaranteeing payment for materials furnished and labor performed, in the amount of $5,975.64, instead of the amount actually received, $10,101.81. True, the City did not thus apply the fund in its hands, but the ability to make such application throws a strong light upon the equities in the instant matter."

In the present case, the contractor was required by contract to pay promptly for all labor and material required in the performance of the contract. The City had the right to withhold money due the contractor, to insure prompt payment. If default was made by the contractor, the City had the right to complete the work, pay all claims for labor and materials and the balance, if any, to the contractor. If the cost of completion by the City was more than it had in its hands, then the contractor and the surety were required to pay the excess. The performance and labor and material bonds were made a part of the construction contract. The contractor defaulted in the performance of the construction contract. The City notified the plaintiffs, sureties on the bonds, to complete the contract. The contract was completed. The sureties paid more for the completion of the contract than the balance in the City's hands. The plaintiffs, sureties, had an assignment of all monies due the contractor in event of default. If the City had completed the contract, it would not have any money in its possession to reimburse itself for loss on the contract for which it now claims a set off.

Under the facts and the law, the claim of set off by the City should not be allowed and the claim of the plaintiffs should be sustained, by reason of the assignment and their rights to subrogation.

Let an order for judgment be prepared and submitted in accordance with the foregoing findings of fact, conclusions of law and this opinion.

### Finding of Fact

1. Continental Casualty Company is a corporation organized and existing under and by virtue of the laws of the State of Indiana, having its principal office or place of business in Chicago, Illinois, and is engaged, inter alia, in the business of writing fidelity and surety bonds.

2. Massachusetts Bonding & Insurance Company is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Massachusetts, having its principal office or place of business in Boston, Massachusetts, and is engaged in the business, inter alia, of writing fidelity and surety bonds.

3. The defendant, City of Pittsburgh, is a municipal corporation in the Commonwealth of Pennsylvania.

4. The amount in controversy, exclusive of interest and costs, is in excess of the sum of $3,000.

5. Middle West Construction, Inc., is an Ohio corporation, having its principal office or place of business in the City of Cleveland, Ohio, and was at all times hereinafter mentioned engaged in general construction work, including construction of roads, highways and sewers.

6. On January 29, 1939, Middle West Construction, Inc., an Ohio corporation, entered into a written contract with the City of Pittsburgh for the construction of a relief sewer in the Columbus Avenue Drainage Basin, Section No. 2, Project No. PA 1970—F, Contract 3.

7. The contract referred to in Finding of Fact 6, provides, inter alia, as follows:

"Article 1. Scope of Work.

The Contractor shall furnish all of the materials and perform all of the work shown on the drawings and described in the specifications, entitled 'Construction of Relief Sewer in the Columbus Avenue Drainage Basin, Section #2, Project No. Pa. 1970—F. Contract No. 3', and shall do everything required by this Agreement and the contract document."

"Article 5. The contract documents shall consist of the following:
  (1) Advertisement.
  (2) Instructions to bidders.
  (3) Proposal (as accepted).
  (4) General Conditions.
  (5) Supplemental Specifications.
  (6) Specifications, including addenda or bulletins.
  (7) Drawings.
  (8) Bonds executed by the Contractor.

This Agreement together with these documents form the contract, and they are so fully a part of the contract as if hereto attached or herein repeated."

General Conditions.

"Contract Security.

1. The Contractor shall furnish a surety bond (form attached) in an amount at least equal to 100 per cent of the contract price as security for the faithful performance of this contract. The contractor shall also furnish a separate surety bond (form attached) in an amount at least equal to 50 per cent of the contract price as security for the payment of all persons performing labor and furnishing materials in connection with this contract."

"Payment of Employees.

11. The Contractor and each of his subcontractors shall pay each of his employees engaged in work on the project under this contract in full (unless deductions made mandatory by law) in cash and not less often than once each week."

"Project Data and Records.

20. Promptly following the preparation of periodical payrolls of the Contractor and of each of his subcontractors, the Contractor shall furnish the City with such number as may be required of certified copies of such payrolls on forms to be supplied by the City. Such certified copies of such payrolls shall be accompanied by such substantial proof that all bills for services rendered and materials supplied have been duly paid as herein required and by such other data as the City may require."

"Payment.

21. (a) Not later than the 15th day of each calendar month, the City will make partial payment to the Contractor on the basis of a duly certified approved estimate of the work performed during the preceding calendar month by the Contractor, but the City will retain 10 per cent of the amount of each such estimate until final completion and acceptance of all work covered by this contract.

(b) The Contractor shall pay:

(2) For all materials, tools, and other expendable equipment to the extent of 90 per cent of the cost thereof, not later than the 20th day of the calendar month following that in which such materials, tools, and equipment are delivered at the site of the project, and the balance of the cost thereof not later than the 30th day following the completion of that part of the work in or on which such materials, tools, and equipment are incorporated or used and

(3) to each of his subcontractors, not later than the 5th day following each payment to the Contractor, the respective amounts allowed the Contractor on account of the work performed by his subcontractors, to the extent of each such subcontractors interest therein."

"22. The Contractor and each of his subcontractors shall comply with the fol-

lowing statute and regulations issued pursuant thereto:

3. Construction of Regulations:

The clause in the payroll affidavit which reads " * * * that the attached payroll is a true and accurate report of the full weekly wages due and paid to each person employed by the said contractor * * * is construed to mean

(a) Wages due are the wages earned during the pay period by each person employed by the Contractor, less any deductions required by law.

(b) At the time of signing the affidavit, the wages due each employee have either been paid to him in full or are being held subject to claim by him.

(c) Such unpaid wages will be paid in full on demand of the employee entitled to receive them."

"City's Right to Stop Work or Terminate Contract.

24. If (a) the Contractor shall be adjudged bankrupt or made an assignment for the benefit of creditors, or (b) a receiver or liquidator shall be appointed for the contractor or for any of his property and shall not be dismissed within 20 days after such appointment, or the proceedings in connection therewith shall not be stayed on appeal within the said 20 days, or (c) the Contractor shall refuse or fail, after Notice or Warning from the Director, to supply enough properly skilled workmen or proper materials, or (d) the Contractor shall refuse or fail to prosecute the work or any part thereof with such diligence as will insure its completion within the period herein specified (or any duly authorized extension thereof) or shall fail to complete the work within said period, or (e) the Contractor shall fail to make prompt payment to persons supplying labor or materials for the work, or (f) the Contractor shall fail or refuse to regard laws, ordinances or the instructions of the Director, or otherwise be guilty of a substantial violation of any provisions of this Contract, then, and in any such event, the City, without prejudice to any other rights or remedy it may have, may by 10 days Notice to the Contractor, terminate the employment of the Contractor and his right to proceed, either as to the entire work or (at the option of the City) as to any portion thereof to which delay shall have occurred, and may take possession of the work and complete the work by contract or otherwise, as the City may deem expedient. In such case the Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the compensation to be paid the Contractor hereunder shall exceed the expense of so completing the work (including compensation for additional managerial, administrative and inspection services and any damages for delay), such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor and his sureties shall be liable to the City for such excess. If the right of the Contractor to proceed with the work is so terminated, the City may take possession of and utilize in completing the work such materials, appliances, supplies, plant and equipment as may be on the site of the work and necessary therefore. If the City does not so terminate the right of the Contractor to proceed, the Contractor shall continue the work."

"City's Right to Withhold Payments.

26. The City may withhold from the Contractor, in addition to retained percentages, such an amount or amounts as may be necessary to pay just claims for labor and services rendered and materials furnished in or about the work. The City shall have the right, acting as agent for the Contractor, to apply such retained amounts to the payment of such just claims."

"Assignment of Contract.

29. No assignment by the Contractor of any principal construction contract or any part thereof, or of the funds to be received thereunder by the Contractor will be recognized unless such assignment has had the prior written approval of the City, and the surety has been given due notice of such assignment in writing in accordance with the terms of its bond."

"Contractor to Sustain all Losses.

51. All loss or damage arising out of the nature of the work or any damages to

the work itself, to be done under this contract, for any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or from any cause whatsoever, until the same shall have been finally accepted and fully paid for, shall be sustained and paid by the Contractor."

"Contractor Liable for Damages.

54. The Contractor shall not obstruct the streets, street railways, steam railroads, passenger travel or traffic or river navigation, without the consent of the proper authorities, and shall observe the laws of the same; he shall place and at all times keep proper guards, fences, barricades, watchmen, etc., and at night suitable and sufficient lamps for the prevention of accidents; he shall observe police regulations and city ordinances; he shall indemnify and save harmless the City its officers, employes and agents, from all suits actions, and proceedings of every kind which may be brought against the City, or its officers, employes or agents, for or on account of any injuries or damages to persons or property received or sustained by any person or persons, firm or corporation by or from the Contractor, of his employes or agents, while engaged in the prosecution of the work under this contract, or by or in consequence of any materials or explosives used on said work, or by or on account of any improper materials or workmanship used in its construction, or by or on account of any accident, that may occur during the performance of the work, or by or on account of any patent invention or article or arrangement that may be used by the Contractor in the work to be done or the material furnished for the work under this contract, or by or on account of any other act either of omission or commission of the Contractor, or of his agent, or employees, and as much money due him under and by virtue of this contract as the Director may consider necessary, shall be retained by the City until all suits of claims for damages as hereinbefore mentioned, which may have been filed with the Director before or immediately after the completion of the work embraced under this contract, shall have

been determined and settled and satisfactory evidence thereof furnished to the Director."

8. Prior to the execution of the contract with the defendant Middle West Construction, Inc., made an application to each of the plaintiffs for the performance bond and the labor and material bond required by its said contract with the defendant and by the Acts of Assembly of Pennsylvania approved June 22, 1931, P.L. 880 and P.L. 881, 53 P.S. §§ 524 and 526. Said Application contained, inter alia, the following agreements between the Contractor and these plaintiffs:

"The undersigned does or do hereby represent that the statements made herein as an inducement to the (surety) Company to execute or procure the bond or bonds herein applied for, are true, and should the Company execute or procure said bond or bonds, does or do agree, for the undersigned, their heirs, personal representatives and assigns of the undersigned, jointly and severally as follows: ·

\* \* \* \* \*

"Second, to indemnify the Company against all loss, costs, damages, expenses and attorney's fees whatever, and any and all liability therefor, sustained or incurred by the Company or by reason of executing of said bond or bonds, or any of them, in making any investigation on account thereof, in prosecuting or defending any action brought in connection therewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained; Third, that the Company shall have the right and is hereby authorized, but not required: \* \* \* (a) To adjust, settle or compromise any claim, demand, suit or judgment upon said bond or bonds, or any of them, unless the undersigned shall request the Company to litigate such claim or demand; \* \* \* Fourth, To assign, transfer and set over, and does or do hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, such assignment to become effective as the date of said contract bond;

(b) All the rights of the undersigned in, and growing in any manner out of, said contract, or any extensions, modifications, changes or alterations thereof or additions thereto, or in, or growing in any manner out of said bonds, or any of them; * * *

"(d) Any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that may thereafter become due; Fifth, that liability hereunder shall extend to and include, the full amount of any and all sums paid by the Company in settlement or compromise of any claims, demands, suits and judgments upon said bond or bonds, or any of them, on good faith, under the belief that it was liable therefor, whether liable or not, as well as any and all disbursements on account of costs, expenses and attorney's fees, as aforesaid, which may be made under the belief that such were necessary, whether necessary or not."

9. Pursuant to said applications and relying on the covenants and agreements therein contained, the plaintiffs did on June 29, 1939, jointly execute as sureties the bonds of the Middle West Construction, Inc., to defendant.

10. The condition of the performance bond is as follows:

"Not Therefore the Condition of This Obligation is Such, That if the Principal shall faithfully perform the contract on his part at the time and in the manner therein provided and satisfy all claims and demands incurred in or for the same, or growing out of the same, or for injury or damage to persons or property in the performance thereof, and shall fully indemnify and save harmless the said Obligee from any and all cost and damage which the said Obligee may suffer by reason of failure so to do, and shall fully reimburse and repay the said Obligee any and all outlay and expense which it may incur by reason of any such default, then this obligation shall be null and void; otherwise it shall remain in full force and virtue."

11. Middle West Construction, Inc., breached its contract with the defendant and defaulted in discharging its indebtedness and liabilities in performance of the work when due and defendant called upon plaintiffs to complete the said contract. Contract was completed and the cost thereof was paid by plaintiffs.

12. Pursuant to their undertaking in the bonds aforesaid the plaintiffs have paid claims for labor and material, claims for damages, costs and attorney's fees in the aggregate sum of $25,861.21.

13. The defendant has in its hands and possession the sum of $23,834.13, the unexpended balance of the contract price due to Middle West Construction, Inc.

14. Plaintiffs have demanded of the defendant the entire balance of the contract price since the amounts paid under its obligation in the bond exceed said balance, but defendant has failed and refused to pay the same or any part thereof.

15. On March 29, 1938, City of Pittsburgh, defendant herein, entered into another contract with Middle West Construction, Inc., for the construction of a Relief Sewer in the Spring Garden Drainage Basin under date of March 29, 1938.

16. Standard Accident Insurance Company executed a labor and material bond and a performance bond to the City of Pittsburgh covering the contract described in the last preceding findings, the terms of said bonds being substantially the same as the bond of the plaintiffs in the case of the Columbus Avenue Drainage Basin contract.

17. Middle West Construction, Inc., began work on the Spring Garden Drainage Basin Sewer on April 12, 1938, and completed the same on October 22, 1938.

18. The City of Pittsburgh, some time in 1941, discovered that the work of the Contractor on the Spring Garden Drainage Basin Sewer was defectively performed. On July 10, 1944, the City estimated on the basis of the then existing costs, that it would require the expenditures of $18,240.30 to complete the said contract for the erection of the Spring Garden Drainage Basin Sewer. Said costs

were from 10% to 15% higher than the costs at the time when the defective performance of the contract was discovered in 1941.

19. Nothing has been done by the City of Pittsburgh, or the contractor, to complete the work of the contractor on the Spring Garden Drainage Basin Sewer.

### Conclusions of Law

I. Upon the default of Middle West Construction, Inc., in the performance of its contract to construct the Columbus Avenue Drainage Basin Sewer, assignment contained in the applications for the bonds became effective as of the date of the contract, to wit, June 29, 1939, and the sureties on the bond of the contractor became entitled to all of the rights of the contractor under or in any manner growing out of its contract with the City of Pittsburgh, including all retained percentages on account of said contract and all sums that might become due thereunder.

II. The contract of Middle West Construction, Inc., with the City of Pittsburgh for the construction of the Spring Garden Drainage Basin Sewer was wholly distinct from and independent of the contract for the construction of the Columbus Avenue Drainage Basin Sewer and the performance of the Contractor's obligations under the Spring Garden Drainage Basin contract was guaranteed by a different surety, to wit, Standard Accident Insurance Company, which was liable to the City for any default of the contractor under said Spring Garden Drainage Basin contract.

III. Plaintiffs in the performance of the contractor's obligations under its contract for the erection of the Columbus Avenue Drainage Basin Sewer having paid out an amount in excess of the balance in the hands and possession of the defendant, is entitled to the full balance now in the hands and possession of the defendant, to wit, $23,834.13.

IV. Defendant is not entitled to set off against the claim of the plaintiffs any amount which it may be compelled to expend for or in the completion of the Spring Garden Avenue Drainage Basin Sewer.