**CONTINENTAL CASUALTY CO. v. CITY OF PITTSBURGH.**

No. 3546.

District Court, W. D. Pennsylvania.

Nov. 15, 1946.

Dickie, Robinson & McCamey, of Pittsburgh, Pa., for plaintiff.

John M. Marshall, Asst. City Sol., of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This case was tried together with Continental Casualty Co., a Corporation, and Massachusetts Bonding Insurance Company, a Corporation, v. City of Pittsburgh, a Municipal Corporation, D. C., 68 F.Supp. 805. The controlling facts in each case are the same. Opinion was filed today in 68 F.Supp. 805 which by reference is made a part hereof. In this case the contract was completed by the City. In the other case, it was completed by the surety companies.

Let an order for judgment be prepared and submitted in accordance with the Find-

ings of Fact, Conclusions of Law and this Memorandum Opinion.

### Findings of Fact

1. Continental Casualty Company is a corporation organized and existing under and by virtue of the laws of the State of Indiana, having its principal office or place of business in Chicago, Illinois, and is engaged, inter alia, in the business of writing fidelity and surety bonds.

2. The defendant, City of Pittsburgh, is a municipal corporation in the Commonwealth of Pennsylvania.

3. The amount in controversy, exclusive of interest and costs, is in excess of the sum of $3,000.

4. Middle West Construction, Inc., is an Ohio corporation, having its principal office or place of business in the City of Cleveland, Ohio, and was at all times hereinafter mentioned engaged in general construction work, including construction of roads, highways and sewers.

5. Heretofore, to wit, on May 11, 1939, Middle West Construction, Inc., entered into a written contract with the City of Pittsburgh for the construction of relief sewers in the Negley Run Drainage Basin, Section 2, Project PA 1590—F, Contract No. 5.

6. The contract referred to in Finding of Fact 5, provides, inter alia, as follows:

"Article 1. Scope of Work.

The Contractor shall furnish all of the materials and perform all of the work shown on the drawings and described in the specifications, entitled 'Construction of Relief Sewer in the Negley Run Drainage Basin, Section 2, Project Pa 1590—F, Contract No. 5', and shall do everything required by this Agreement and the contract document."

"Article 5. The contract documents shall consist of the following:
    (1) Advertisement.
    (2) Instructions to bidders.
    (3) Proposal (as accepted).
    (4) General Conditions.
    (5) Supplemental Specifications.
    (6) Specifications, including addenda or bulletins.
    (7) Drawings.
    (8) Bonds executed by the Contractor.

This agreement together with these documents form the contract, and they are as fully a part of the contract as if hereto attached or herein repeated."

### General Conditions.

"Contract Security.

1. The Contractor shall furnish a surety bond (form attached) in an amount at least equal to 100 per cent of the contract price as security for the faithful performance of this contract. The contractor shall also furnish a separate surety bond (form attached) in an amount at least equal to 50 per cent of the contract price as security for the payment of all persons performing labor and furnishing materials in connection with this contract."

"Payment of Employees.

11. The Contractor and each of his subcontractors shall pay each of his employees engaged in work on the project under this contract in full (unless deductions made mandatory by law) in cash and not less often than once each week."

"Project Data and Records.

20. Promptly following the preparation of periodical payrolls of the Contractor and of each of his subcontractors, the Contractor shall furnish the City with such number as may be required of certified copies of such payrolls on forms to be supplied by the City. Such certified copies of such payrolls shall be accompanied by such substantial proof that all bills for services rendered and materials supplied have been duly paid as herein required and by such other data as the City may require."

"Payment.

21. (a) Not later than the 15th day of each calendar month, the City will make partial payment to the Contractor on the basis of a duly certified approved estimate of the work performed during the preceding calendar month by the Contractor, but the City will retain 10 per cent of the amount of each such estimate until final comple-

tion and acceptance of all work covered by this contract.

(b) The Contractor shall pay:

(2) For all materials, tools, and other expendable equipment to the extent of 90 per cent of the cost thereof, not later than the 20th day of the calendar month following that in which such materials, tools, and equipment are delivered at the site of the project, and the balance of the cost thereof not later than the 30th day following the completion of that part of the work in or on which such materials, tools, and equipment are incorporated or used and

(3) to each of his subcontractors, not later than the 5th day following each payment to the Contractor the respective amounts allowed the Contractor on account of the work performed by his subcontractors, to the extent of each such subcontractor's interest therein."

"22. The Contractor and each of his subcontractors shall comply with the following statute and regulations issued pursuant thereto:

3. Construction of Regulations:

The clause in the payroll affidavit which reads * * * that the attached payroll is a true and accurate report of the full weekly wages due and paid to each person employed by the said contractor * * * is construed to mean:

(a) Wages due are the wages earned during the pay period by each person employed by the Contractor less any deductions required by law.

(b) At the time of signing the affidavit, the wages due each employee have either been paid to him in full or are being held subject to claim by him.

(c) Such unpaid wages will be paid in full on demand of the employee entitled to receive them."

"City's Right to Stop Work or Terminate Contract.

24. If (a) the Contractor shall be adjudged bankrupt or made an assignment for the benefit of creditors, or (b) a receiver or liquidator shall be appointed for the contractor or for any of his property and shall not be dismissed within 20 days after such appointment, or the proceedings in connection therewith shall not be stayed on appeal within the said 20 days, or (c) the Contractor shall refuse to supply enough properly skilled workmen or proper materials, or (d) the Contractor shall refuse or fail to prosecute the work or any part thereof with such diligence as will insure its completion within the period herein specified (or any duly authorized extension thereof) or shall fail to complete the work within said period, or (e) the Contractor shall fail to make prompt payment to persons supplying labor or materials for the work, or (f) the Contractor shall fail or refuse to regard laws, ordinances or the instructions of the Director, or otherwise be guilty of a substantial violation of any provisions of this Contract, then, and in any such event, the City, without prejudice to any other rights or remedy it may have, may by 10 days Notice to the Contractor, terminate the employment of the Contractor and his right to proceed, either as to the entire work or (at the option of the City) as to any portion thereof to which delay shall have occurred, and may take possession of the work and complete the work by contract or otherwise, as the City may deem expedient. In such case the Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the compensation to be paid the Contractor hereunder shall exceed the expense of so completing the work (including compensation for additional managerial, administrative and inspection services and any damages for delay), such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor and his sureties shall be liable to the City for such excess. If the right of the Contractor to proceed with the work is so terminated, the City may take possession of and utilize in completing the work such materials, appliances, supplies, plant and equipment as may be on the site of the work and necessary therefor. If the City does not so terminate the right of the Contractor to proceed, the Contractor shall continue the work."

"City's Right to Withhold Payments.

26. The City may withhold from the Contractor, in addition to retained percentages, such an amount or amounts as may be

necessary to pay just claims for labor and services rendered and materials furnished in or about the work. The City shall have the right, acting as agent for the Contractor, to apply such retained amounts to the payment of such just claims."

"Assignment of Contract.

29. No assignment by the Contractor of any principal construction contract or any part thereof, or of the funds to be received thereunder by the Contractor will be recognized unless such assignment has had the prior written approval of the City, and the surety has been given due notice of such assignment in writing in accordance with the terms of its bond."

"Contractor to Sustain all Losses.

51. All loss or damage arising out of the nature of the work or any damages to the work itself, to be done under this contract, for any unforeseen obstructions or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, or from any cause whatsoever, until the same shall have been finally accepted and fully paid for, shall be sustained and paid by the Contractor."

"Contractor Liable for Damages.

54. The Contractor shall not obstruct the streets, street railways, steam railroads, passenger travel or traffic or river navigation, without the consent of the proper authorities, and shall observe the laws of the same; he shall place and at all times keep proper guards, fences, barricades, watchmen, etc., and at night, suitable and sufficient lamps for the prevention of accidents; he shall observe police regulations and city ordinances; he shall indemnify and save harmless the City, its officers, employes and agents, from all suits, actions, and proceedings of every kind which may be brought against the City, or its officers, employes or agents, for or on account of any injuries or damages to persons or property received or sustained by any person or persons, firm or corporation by or from the Contractor, of his employes or agents, while engaged in the prosecution of the work under this contract, or by or in consequence of any materials or explosives used on said work, or by or on account of any improper materials or workmanship used in its construction, or by or on account of any accident, that may occur during the performance of the work, or by or on account of any patent invention or article or arrangement that may be used by the Contractor in the work to be done or the material furnished for the work under this contract, or by or on account of any other act either of omission or commission of Contractor, or of his agent, or employees, and as much money due him under and by virtue of this contract as the Director may consider necessary, shall be retained by the City until all suits or claims for damages as hereinbefore mentioned, which may have been filed with the Director before or immediately after the completion of the work embraced under this contract, shall have been determined and settled and satisfactory evidence thereof furnished to the Director."

7. Prior to the execution of the contract with the defendant Middle West Construction, Inc., made an application to the plaintiff for the performance bond and the labor and material bond required by its said contract with the defendant and by the Acts of Assembly of Pennsylvania approved June 22, 1931, P.L. 880 and P.L. 881, 53 P.S. §§ 524 and 526. Said application contained, inter alia, the following agreements between the Contractor and this plaintiff:

"The undersigned does or do hereby represent that the statement made herein as an inducement to the (surety) Company to execute or procure the bond or bonds herein applied for, are true, and should the Company execute or procure said bond or bonds, does or do agree, for the undersigned, their heirs, personal representatives and assigns of the undersigned, jointly and severally as follows:

   *     *     *     *     *     *

Second, to indemnify the Company against all loss, costs, damages, expenses and attorney's fees whatever, and any and all liability therefor, sustained or incurred by the Company or by reason of executing of said bond or bonds, or any of them, in making any investigation on account thereof, in prosecuting or defending any action brought in connection therewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained;

Third, that the Company shall have the right and is hereby authorized, but not required: * * * (b) To adjust, settle or compromise any claim, demand, suit or judgment upon said bond or bonds, or any of them, unless the undersigned shall request the Company to litigate such claim or demand; * * * Fourth, To assign, transfer and set over, and does or do hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, such assignment to become effective as the date of said contract bond; (b) All the rights of the undersigned in, and growing in any manner out of said contract, or any extensions, modifications, changes or alterations thereof or additions thereto, or in, or growing in any manner out of said bonds, or any of them; * * * (d) Any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture or breach, or that may thereafter become due; Fifth, that liability hereunder shall extend to and include, the full amount of any and all sums paid by the Company in settlement or compromise of any claims, demands, suits and judgments upon said bond or bonds, or any of them, on good faith, under the belief that it was liable therefor, whether liable or not, as well as any and all disbursements on account of costs, expenses and attorney's fees, as aforesaid, which may be made under the belief that such were necessary, whether necessary or not."

8. Pursuant to said application and relying on the covenants of agreement therein contained, plaintiff did on May 12, 1939, execute as surety the bonds of said Middle West Construction Company, to defendant.

9. The condition of the performance bond is as follows: "Now Therefore the Condition of This Obligation is Such, That if the Principal shall faithfully perform the contract on his part at the time and in the manner therein provided and satisfy all claims and demands incurred in or for the same, or growing out of the same, or for injury or damage to persons or property in the performance thereof, and shall fully indemnify and save harmless the said Obligee from any and all cost and damage which the said Obligee may suffer by reason of failure so to do, and shall fully reimburse and repay the said Obligee any and all outlay and expense which it may incur by reason of any such default, then this obligation shall be null and void, otherwise it shall remain in full force and virtue."

10. Middle West Construction Company breached its contract with the defendant and defaulted in discharging its indebtedness and liabilities incurred in the performance of the work and on May 8, 1942, defendant notified said Middle West Construction Company that since it had refused to complete the work it (the defendant) would complete said work and the defendant thereupon did complete the work called for by the contract.

11. Pursuant to their undertaking in the bond aforesaid the plaintiff has paid claims for labor and material, claims for damages, costs and attorney's fees in the aggregate sum of $5,966.96.

12. The defendant has in its hands and possession the sum of $413.86, the unexpended balance of the contract price due to Middle West Construction Company.

13. Plaintiff has demanded of the defendant the entire balance of the contract price since the amounts paid under its obligation in the bond exceed said balance, but defendant has failed and refused to pay the same or any part thereof.

14. On March 29, 1938, City of Pittsburgh, defendant herein, entered into another contract with Middle West Construction Company for the construction of a Relief Sewer in the Spring Garden Drainage Basin under date of March 29, 1938.

15. Standard Accident Insurance Company executed a labor and material bond and a performance bond to the City of Pittsburgh covering the contract described in the last preceding finding, the terms of said bonds being substantially the same as the bond of the plaintiffs in the case of the Negley Run Drainage Basin contract.

16. Middle West Construction Company began work on the Spring Garden Drainage Basin Sewer on April 12, 1938, and completed the same on October 22, 1938.

17. The City of Pittsburgh, some time in 1941, discovered that the work of the Contractor on the Spring Garden Drainage Basin Sewer was defectively performed. On July 10, 1944, the City estimated on the basis of the then existing costs, that it would require the expenditure of $18,240.30 to complete the said contract for the erection of the Spring Garden Drainage Basin Sewer. Said costs were from 10% to 15% higher than the costs at the time when the defective performance of the contract was discovered in 1941.

18. Nothing has been done by the City of Pittsburgh to correct or complete the work of the contractor on the Spring Garden Drainage Basin Sewer.

#### Conclusions of Law.

I. Upon the default of Middle West Construction Company in the performance of its contract to construct the Negley Run Drainage Basin, assignment contained in the application for the bonds became effective as of the date of the contract, to wit, May 12, 1939, and the surety on the bond of the Contractor became entitled to all of the rights of the Contractor under or in any manner growing out of its contract with the City of Pittsburgh, including all retained percentages on account of said contract and all sums that might become due thereunder.

II. The contract of Middle West Construction Company with the City of Pittsburgh for the construction of the Spring Garden Drainage Basin Sewer was wholly distinct from and independent of the contract for the construction of the Negley Run Drainage Basin Sewer and the performance of the contractor's obligations under the Spring Garden Drainage Basin contract was guaranteed by a different surety, to wit, Standard Accident Insurance Company, which was liable to the City for any default of the contractor under said Spring Garden Drainage Basin contract.

III. Plaintiff in the performance of the contractor's obligations under its contract for the erection of the Negley Run Drainage Basin Sewer having paid out an amount in excess of the balance in the hands and possession of the defendant, is entitled to the full balance now in the hands and possession of the defendant, to wit, $413.86.

IV. Defendant is not entitled to set off against the claim of the plaintiffs any amount which it may be compelled to expend for or in the completion of the Spring Garden Avenue Drainage Basin Sewer.