## Philadelphia to use v. George W. Stewart, Appellant.

*Evidence—Parol evidence—Agreement partly parol and partly in writing..*

The construction of an oral agreement belongs to the jury, and parol evidence connected with a writing draws the whole from the court.

*Municipal contracts — Subcontract — Plumbing — Evidence—Parol evidence—Variance.*

Where a municipal contract provides that the glass in a certain room in the building to be constructed under the contract shall be bolted to the wall, and the municipal authorities under a power given to them in the contract subsequently change this clause and direct that the glass shall be cemented to the wall, and it appears that the contractor had sublet all the plumbing, and it also appears that the contractor suffered a heavy loss from the fact that the cementing proved a failure, the subcontractor in a suit against the contractor is entitled to have submitted to the jury on the conflicting evidence in the case, (1) whether the contract which was partly in parol and partly in writing did not relieve the subcontractor from the loss resulting from the cementing; (2) whether under the usage of the trade the cementing of the glass to the wall was part of the plumbing; and (3) whether the change from bolting to cementing had been directed by the contractor under instructions from the city architect.

*Principal and surety—Municipal contract—Variance.*

Where a municipal contract provides that certain work shall be done in a particular way, but also provides that the city may change the plans and specifications without avoiding the contract, and the contractor gives an obligation with surety to the city conditioned to pay subcontractors and material men, in which obligation the building contract is referred to, the surety cannot claim a discharge from liability because the city changed the plans as to certain portions of the work.

*Bond—Municipal contract—Bond to secure contractor—Material men and subcontractors.*

An ordinance which requires a bond to be given by a municipal contractor to secure payment to workmen, material men and subcontractors, and which provides that any person who has supplied labor or material "shall have a right of action, and shall be authorized to bring suit in the name of the city," is a perfectly valid ordinance, and in a suit brought by a subcontractor in the name of the city to his own use upon a bond given under the ordinance, the contractor cannot allege that the issue raised was res adjudicata by reason of previous litigation between himself and the city.

Argued Jan. 13, 1902. Appeal, No. 251, Jan. T., 1901, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1898, No. 452, on verdict for plaintiff in case of Philadelphia to use of Samuel Faith and John Long, Copartners, trading as S. Faith & Company, v. George W. Stewart and the Equitable Trust Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit on contract. Before Audenried, J.

The facts are fully stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $4,127.08. Defendant appealed.

*Error assigned* was in refusing binding instruction for defendant, and in submitting the case to the jury.

*Francis Shunk Brown,* with him *Ira J. Williams* and *Alex. Simpson,* for appellants.—The evidence was insufficient to vary the written acceptance which bound use plaintiffs to do all the plumbing work: Martin v. Schoenberger, 8 W. & S. 369; Wilson v. Lyle, 23 W. N. C. 309; Gillespie Tool Co. v. Wilson, 123 Pa. 19; Hartman v. Meighan, 171 Pa. 46; Gaynor v. Williamsport, etc., R. R. Co., 189 Pa. 5; Jessop v. Ivory, 158 Pa. 77; Dickson v. Hartman Mfg. Co., 179 Pa. 350; Murray v. New York, etc., R. R. Co., 103 Pa. 37; Spencer v. Colt, 89 Pa. 314.

There was a fatal variance between the "allegata" and the "probata:" Merriman v. Bush, 116 Pa. 290; Cleaver v. Garner, 133 Pa. 426; Umbehocker v. Rassel, 2 Yeates, 339; Philip v.

Kirkpatrick, 2 Yeates, 444; Stump v. Hutchinson, 11 Pa. 533; Wiest v. Electric Traction Co., 200 Pa. 149; Royse v. May, 93 Pa. 454; Haviland v. Fidelity Insurance Trust & Safe Deposit Co., 3 Pa. C. C. Rep. 222; Knabb v. Kaufman, 1 Woodward, 319; Perot v. Leeds, 36 Legal Int. 292; Fairchild v. Dunbar, 128 Pa. 496; Tyrrill v. Lamb, 96 Pa. 464; First Nat. Bank v. Shoemaker, 117 Pa. 102; Heller v. Royal Ins. Co., 151 Pa. 104.

The bond is conditioned for the payment for work done according to certain specifications. As use plaintiffs' work was admittedly not so done, there can be no recovery.

The Equitable Trust Company was relieved by the variance of the contract: Nesbitt v. Turner, 155 Pa. 429; Dunbar v. Fleisher, 137 Pa. 85; Janes v. Benson, 155 Pa. 489; Clippinger v. Creps, 2 Watts, 45; Hibbs v. Rue, 4 Pa. 348.

The record of the case of Stewart v. The City of Philadelphia is conclusive against appellee: Guaranty Trust & Safe Deposit Co. v. Powell, 150 Pa. 18; Montgomery v. Cook, 6 Watts, 236; Com. v. Philadelphia, 193 Pa. 239; McKinney v. Mehaffey, 7 W. & S. 275; Memphis, etc., R. R. Co. v. Wilcox, 48 Pa. 161; Com. v. Phila., 193 Pa. 239; Philadelphia v. Stewart, 195 Pa. 314; Lancaster v. Frescoln, 192 Pa. 457.

*George P. Rich*, with him *Henry C. Boyer*, for appellees.— Where in the construction of a contract there is an ambiguity in its terms arising from reference to extrinsic business, parol testimony may be resorted to for the purpose of explaining and showing the application of the terms of the contract, but such evidence is for the jury: McCullough v. Wainright, 14 Pa. 171; Martinsburg Bank v. Central Pa. Telephone & Supply Co., 150 Pa. 36; National Dredging Co. v. Mundy, 155 Pa. 233; McNish v. Reynolds, 95 Pa. 486.

OPINION BY MR. JUSTICE DEAN, February 24, 1902:

George W. Stewart contracted with the city of Philadelphia to erect additions to the Philadelphia Hospital, and gave bond for the performance of his contract. A general ordinance of the city approved March 30, 1896, directed that all contractors for city work should give another bond to the city, conditioned for the prompt payment of all persons furnishing labor and ma-

terials to enable the contractor to prosecute to completion his contract with the city. Stewart gave the required additional bond in the sum of $19,030 with the Equitable Trust Company as his surety. The bond recited the outlines of Stewart's contract with the city, to furnish all materials and labor to complete his contract according to his proposal and the specifications appended thereto, and then followed this condition:

" That if the said George W. Stewart shall and will promptly pay or cause to be paid to any and all persons, any and all sum or sums of money which may be due for labor or materials furnished and supplied or performed in or about said work, and shall and will comply with all the provisions of the ordinance of the select and common councils of Philadelphia, entitled "An ordinance for the protection of subcontractors as well as for persons furnishing materials and labor for the construction of buildings for the county of Philadelphia, or for any other city work;" approved March 30, 1896; then this obligation to be null and void; otherwise to be and remain in full force and virtue.

It being understood and agreed that no suit shall be brought upon this bond after the expiration of two years from the date hereof."

In the ordinance referred to this is called an "additional obligation" on the part of the principal contractor and it is provided in the ordinance, that any person or persons supplying labor or materials to him "shall have a right of action and shall be authorized to bring suit in the name of the city of Philadelphia for his or their use and benefit against said contractor and sureties and prosecute the same to final judgment and execution."

Stewart's contract under the different specifications called for work amounting to about $40,000. Among many other specifications, was one requiring him to construct urinals and toilet rooms lined with glass; this specification was particularly minute in setting out the size and dimensions of the rooms, the size and quality of the glass and the method of affixing it to the walls. Then followed this provision:

"It is understood that the city of Philadelphia shall have the right during the progress of construction to make any alterations, or additions or omissions of work or materials herein

specified or shown on the drawings as it may desire, and the same shall be carried into effect by the contractor or contractors without in any way violating or vitiating the contract."

"Any disagreement or difference between the city of Philadelphia and contractor upon any matter or thing arising from this specification or the drawings to which it refers, or the kind or quality of the work required thereby, shall be decided by engineers and architects, whose decision and interpretation of the same shall be considered final, conclusive and binding upon both parties."

The specifications called for glass wainscoting to be bolted into place in the toilet rooms ; during the progress of the work the city architects, under the privilege stipulated for in the contract, changed the mode of fixing the glass to the wall, and instead of bolting undertook to fasten it by cement, and so informed Stewart; and further, notified him, that the manager of the Mott Manufacturing Company with whom Faith and Company had contracted for the glass would instruct him, Stewart, how to cement the glass to the wall. Faith and Company, these appellees, contracted with Stewart to do the plumbing work for the urinals and the toilet rooms and to furnish the glass and other material ; they alleged, that this did not include the work of cementing the glass to the walls, and that their contract with Stewart excluded it; the contract was partly oral and partly in writing. And the evidence was of such nature as to clearly, under the authorities, draw the whole to the jury as an oral contract. What the parties said and what they meant by what they said was for the jury to answer. It was not a written contract which one party maintained and the other sought to alter or contradict as argued ; it was a mixed written and oral contract the terms of which were disputed. A mere reading of the testimony of John Long a member of the firm of Faith and Company, with the testimony of Stewart and the numerous letters passed between them, established the character of the contract. Said GIBSON, C. J., in McFarland v. Newman, 9 Watts, 55, "The construction of an oral agreement belongs to the jury and parol evidence connected with a writing draws the whole from the court, is so often repeated in our own reports that I forbear to enumerate the cases." This rule has been invariably followed all through

our subsequent cases. And this rule the learned judge of the court below applied in this case.

The change from bolting the glass to cementing it proved a complete failure, resulting in very great expense and loss. Whose fault it was does not concern us here so long as the fact remains as the jury has found, that it was not that of Faith and Company. Stewart contracted to pay Faith and Company for plumbing, $3,550. It was not disputed, that the glass and materials furnished by Faith and Company accorded with the specifications, nor was it alleged the plumbing work except as to cementing the glass to the walls, was faulty. When Stewart's work was completed, as he claimed it was, he demanded a settlement with the city; the city alleged he had not complied with his contract and deducted $7,500 from his claim, about $2,000 of which deduction, was made up of what the city alleged, was defective plumbing in the toilet rooms and urinals. Stewart finally acquiesced in the deduction, accepted the balance and gave the city a receipt in full. Afterwards repenting, he sued the city for the amount of the reduction; this issue was sent to a referee, who after hearing the evidence decided in favor of the city, basing his decision, in the main, on the fact that Stewart without fraud or duress, voluntarily delivered the receipt in full. He having refused to pay Faith and Company they brought this suit against Stewart and his surety in name of city for their use on the additional bond, to recover the value of the plumbing work.

The defense was:

1. That the affixing of the glass was part of Faith and Company's contract for plumbing work; that instead of bolting as demanded by the specification they had cemented, which proved a failure and consequent heavy loss to Stewart in his settlement with the city.

The court properly left the evidence on this branch of the defense to the jury. What was in the usage of the trade understood or technically included in the contract for plumbing between Faith and Company and Stewart? Even if, such work was "plumbing" within the contract meaning of the parties had the change from "bolting" to "cement" been directed by Stewart under instructions from the city architect? As to one or other issue of disputed fact the jury must have found for

plaintiffs on sufficient evidence; it is not our duty to inquire further.

2. It was argued by defendants, that if Faith and Company deviated from the specifications in their contract with Stewart, who permitted it because his contract with the city required him so to do when the city so ordered by the architect, then such change worked a discharge of the surety, the Equitable Trust Company. Ordinarily, the change of the principal debtor's contract without the consent of the surety, does operate to release the latter from his obligation; but not so in this case. Stewart's individual contract with the city for the whole work, expressly stipulated that the city should have the right at any time during the progress of the work, to alter, add to, or omit any part of the plans or specifications without avoiding the contract. His contract is referred to in the "additional obligation" contract here sued on, and must be read into and form part of it. Therefore, the surety undertook in effect, that Stewart should pay, even if the contract had, under the directions of the city architect been altered, and the court properly so held.

3. It is further argued, that plaintiffs cannot recover on this second bond because, the legal plaintiff is the city. It alone has any legal title to the instrument sued on. Unless it has a right to recover, the use plaintiffs as beneficiaries are without right. The questions arising out of Stewart's contract are res adjudicata and cannot again be litigated in this issue.

As to the proposition, that the interest of the legal owner or payee of a specialty has disappeared either by satisfaction or formal release under seal or by final adjudication, no alleged beneficiary or use party can maintain a suit, in the name of the legal plaintiff on the instrument, needed not the elaborate argument and citation of authorities by appellant to sustain it. In the case of the assignment of a bond or simple bill the right of the legal plaintiff against defendant is the only one on which a suit can be sustained. But the many cases in which this has been held are altogether aside from the one before us. What is the foundation of the ordinance of March 30, 1896, directing the execution of the original bond? Clearly it seems to us, a public municipal policy. Seldom are contractors for large public works, able of themselves, to furnish the labor and material

necessary to the completion of their contracts; in nearly every case they rely on many subcontractors and material men; to furnish different kinds of mechanical skill and labor, also material, such as stone, brick, lumber, glass and iron; these have nothing on which to rely for payment except the honesty and ability of the principal contractor. If the contractor of himself do not inspire confidence among these, who must be subordinate to him, his ability in many cases to bid for large work must be weakened or altogether destroyed; as a necessary consequence, competition for work disappears, in large measure, and there follows a monopoly to the few contractors of large capital, with the inevitable result of exorbitant prices. Every one knows the city will pay the principal contractor, but will he pay his subcontractors and material men whether he makes or loses, on his contract, is the question with them? As a matter of public policy the city undertakes to protect them by an ordinance such as that of March 30, 1896. As a preliminary to awarding the contract to the principal contractor, it exacts from him what is called the "additional obligation" for the protection of these subordinates. The ordinance might have directed the insertion of any name, that of mayor, director of public works, or other city officer as the obligee in the bond, thus in case of suit creating a legal plaintiff or trustee for the subcontractors. The name of the use party could not be inserted, because the bond was a condition precedent to awarding the contract and the use parties could not then well be known, either to the city or principal contractor. That this ordinance is a valid one which the city, to carry out a municipal policy which must inure to the benefit of the public, may adopt, cannot be questioned. True, no immediate financial benefit results to the city, but an indirect advantage does. It gets none of the money stipulated for in the bond and expects none; it merely assumes, voluntarily as part of its purpose the position of a sort of trustee in protecting those who are not wholly without merit and might otherwise be without remedy. Its situation both legal and equitable is wholly different from that in which it stands as obligee on the individual bond of the principal contractor; no suit on that bond adjudicates any right of any of the parties interested directly or indirectly on the "additional bond." On this last bond the city has still the

right to sue as legal plaintiff for the benefit of those for whose financial use the bond was given. It is bound to exercise that right when the condition of the bond is broken by the obligor. Whether he has lost or made by his contract, whether as to him the city has lost or made are not conditions of this second bond. Have the material men and subcontractors faithfully performed their contracts with the principal contractor? If yea, the principal contractor and his surety have no defense; if nay, they have.*

In what we have said we have practically discussed all the assignments of error possessing any merit. All are overruled and the judgment is affirmed.

---

*See Philadelphia v. Stewart, 198 Pa. 422. Reporter.