Harry GILBERT and Irene W. Gilbert

v.

**SAFEGUARD MUTUAL INSURANCE COMPANY.**

Civ. A. No. 70–3423.

United States District Court,
E. D. Pennsylvania.

July 26, 1972.

Ronald Jay Bayer, Philadelphia, Pa., for plaintiffs.

Malcolm H. Waldron, Jr., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Plaintiffs, Harry and Irene W. Gilbert, citizens of New York, were holders of bonds of William Penn Finance Company and Associated Acceptance Corporation in the total face amount of $17,000. The bonds were insured against loss in the event of the insolvency of either corporation by Empire Mutual Insurance Company. On September 1, 1960, William Penn and Associated Acceptance merged with Commonwealth Financial Corporation. Several years later Safeguard Mutual Insurance Company, a Pennsylvania corporation, replaced Empire as insurer of the obligations which Commonwealth had assumed by reason of the merger.

The Gilberts received two documents entitled "Safeguard Mutual Insurance Company Certificates of Insurance" (hereinafter Certificates of Insurance) from Commonwealth Financial sometime in 1965. The Certificates of Insurance bore the signature "Sydney O. Snitzer" and provided as follows:

"It is hereby certified by Safeguard Mutual Insurance Company, a Pennsylvania insurance corporation, that the debenture holder named below is fully insured for the amount specified in this Certificate for the period specified pursuant to a Master Policy dated January 15, 1965, in which the debentures described below of Commonwealth Financial Corporation, a Pennsylvania corporation, are insured as to principal and interest for a period of five years as provided therein.

"This Certificate issued to: (The debenture holders) Harry G. Gilbert or Irene W. Gilbert
Address: 2900 Ocean Avenue, Brooklyn, N.Y. 11235
Amount: $_____

IN WITNESS WHEREOF the Safeguard Mutual Insurance Company has had this Certificate inscribed by its agent duly authorized thereto as of this _____ day of _____, 1965.

Safeguard Mutual
Insurance Company
By: s/Sydney O. Snitzer"

One Certificate [Exhibit P-2] dated March 1, 1965, was for $4,900, representing the face amount of the bonds originally issued by Associated Acceptance, and the other [Exhibit P-3] dated August 1, 1965, was for $12,100, representing the face amount of the bonds originally issued by William Penn.

Commonwealth Financial defaulted in interest payments in 1967 and the Gilberts made claim to Safeguard for payment. Thereafter, in December 1967, Commonwealth Financial became insolvent and went into bankruptcy. Despite repeated demands, the Gilberts' claim was not paid by Safeguard and the Gilberts brought suit in this court (on diversity grounds) to recover the amount of the principal of the bonds, plus accumulated interest, less the amount which had been received by the Gilberts as a liquidation dividend from the Bankruptcy court.

The case came to trial on February 18, 1972, but a mistrial was declared upon defendant's motion. Upon retrial in early March, 1972, the jury returned a verdict in favor of the Gilberts for $17,193, the stipulated amount of damages, which stipulated amount included principal and interest.

Before the court are Safeguard's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial.

The grounds asserted for the motions are:

1. the court erred in permitting the jury to determine what the contract was between the parties;

2. the court erred in its interpretation of a written instrument issued by Safeguard;

3. the court erred in admitting the Certificates of Insurance into evidence; and

4. the court erred in allowing plaintiffs to reopen their case at the aborted first trial.

The motions will be denied.

1. *The Court erred in permitting the jury to determine what the contract was between the parties.*

At trial, plaintiffs introduced into evidence a copy of a Safeguard Mutual Insurance Company insurance policy issued to Commonwealth Financial Corporation and dated March 10, 1965. The document was Exhibit P–28 and defendant maintains that it was the Master Policy referred to in the Certificates of Insurance. It is defendant's contention that since plaintiffs introduced that agreement, they were bound by its terms and by the testimony of Leopold Weiner, Corporate Secretary of Safeguard, that that document was the only written contract of insurance between Safeguard and Commonwealth Financial. Defendant argues, therefore, that the court erred when it permitted the jury to determine whether that document [Exhibit P–28] was the master policy referred to in the Certificates of Insurance, or whether there was another master policy which had not been produced, or whether no such master policy existed, in which case the jury might find that the Certificates of Insurance constituted the entire insuring agreement between plaintiffs and Safeguard.

■ The evidence in the case amply justified submission of the issue to the jury. Where there is a dispute as to which set of several circumstances, some expressed in writing and some oral, constitute the agreement between the parties it is the jury's function and not the court's to determine which set of circumstances constitutes the true agreement. See Philadelphia v. Stewart, 201 Pa. 526, 51 A. 348 (1902); Jessop v. Ivory, 172 Pa. 44, 33 A. 352 (1895); and see McCormack v. Jermyn, 351 Pa. 161, 40 A.2d 477 (1965).

In the instant case, the discrepancies between P–28 and the Certificates of Insurance were such as to create serious doubt that P–28 was the master policy referred to in the Certificates of Insurance issued to the Gilberts. For example, the Certificates of Insurance indicated that the bondholders were protected by a master policy which insured bonds against loss as to *both principal and interest*, yet the alleged master policy, P–28, insured against loss of *principal only*. Further, the Certificates of Insurance referred to a master policy dated January 15, 1965. There was testimony that P–28 did not physically come into existence until March *10*, 1965, yet one of the Certificates was issued on March *1*, 1965. Another point of discrepancy was that the Certificates of Insurance provided for a five year term of coverage as set forth in the master policy, whereas P–28 made no mention of a specific period of coverage.

Beyond the discrepancies between the Certificates of Insurance and P–28, the following testimony, elicited on cross-examination of defendant's Secretary, Mr. Weiner, indicates that there had been an oral agreement existing between Commonwealth and Safeguard for several months prior to March 10, 1965, the date P–28 came into existence:

"MR. BAYER:

Q. Now let me ask you again: On March 9 was there a policy in existence or any coverage in existence? I show you P–28. Now, on March 9, the day before the day of that policy, was there any policy in effect?

A. Sure, there was a policy in effect in November of 1964, in accordance to my negotiations with Mr. Gilbert. Now, your question—

Q. Let's limit this—

A. Hold it a minute. Let me answer the question. Are you referring to a written policy or an actual policy that was given to him under a binder?

Q. There was an oral policy existing before this date?

A. Oh, sure. There were negotiations back in October of 1964 with regard to this transaction.

Q. So that, in other words, your company did insure debenture holders prior to the date that you issued this policy?

A. Our company insured debentures holders as of January 15, 1965, in accordance with the terms of that policy and in accordance with the terms of this reporting form.

Q. Were there any terms as far as—

BY THE COURT:

Q. I think what we have to find out, pretty obviously, Mr. Weiner, is this: The policy P–28 is dated March 10, 1965.

A. That's correct.

Q. You have now indicated that there were some policies of insurance in one form or another in effect as early as October of 1964. I think the jury is entitled to know what it is that evidences that. Do you have anything to evidence that?

A. These are negotiations, Your Honor.

Q. Then you say there was an oral agreement?

A. There was an oral agreement in which Safeguard Mutual Insurance Company agreed to insure as to interest and principal up to $200,000 of bonds that Commonwealth Financial Corporation were to issue as of January 15, 1965. These were my negotiations with Mr. Gerber. The policy was dated March 10, 1965. He had those certificates printed which had a date of January 15, 1965. I sent him a letter amending that March policy to January 15, 1965, so everything after January 15, 1965, up to $200,000, pursuant to that master policy was insured by Safeguard if they were validated." (N.T. 97–99)

Insofar as the defendant contends that plaintiffs are bound by the testimony of Mr. Weiner that P–28 was the only agreement between Safeguard and Commonwealth, that question was settled by the Court of Appeals for the Third Circuit in Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467 (3d Cir. 1950). There the trial judge had charged the jury that:

"to the extent that testimony as produced from a person called for cross-examination is not rebutted by either direct proof or circumstances it is conclusively taken to be true."

In holding that charge to be erroneous, the Court of Appeals pointed out that Rule 43(b) expressly provides that an adverse witness may be contradicted and impeached.

*2. The Court erred in its interpretation of a written instrument issued by Safeguard.*

Defendant contends that the court misinterpreted P–28 for the jury. That instrument provides in the preamble:

"In the event of the liquidation of [Commonwealth] in a court proceeding . . . Safeguard agrees, subject to the terms and conditions hereof, to pay to the registered holder of certain Obligations, to be called 'Insured Obligations,' any deficit of principal after final disposition of the liquidation proceeds."

Part IV of the policy entitled "Validating by Safeguard," provides:

"No Obligation shall be an Insured Obligation unless it is validated by Safeguard."

The policy defines "validation" in part II(b) to mean that:

"(i) The manual or facsimile signature of an authorized officer of Safeguard is endorsed on the Obligation; and

(ii) The original or facsimile seal of Safeguard is affixed to the Obligation."

Under part V, entitled "Undertakings by Issuer," the "Issuer," defined elsewhere as Commonwealth Financial, agrees that it

"(i) Shall not issue any Obligation which has not been validated by Safeguard."

Safeguard argues that the bonds held by the Gilberts had not been validated and that the lack of validation was available to Safeguard as a defense to the Gilbert claim. The jury was charged that lack of validation was not a defense against a bondholder's claim. This instruction was based upon the court's interpretation of part V of P–28 which provided:

"Safeguard shall not be relieved of any liabilities to the registered holder of any Insured Obligation for any otherwise valid claim in the event of any violation of the Undertakings contained in this Article V."

■ One of the undertakings by Commonwealth under part V, as above noted, was not to issue bonds which had not been properly validated by Safeguard, but the language last quoted clearly provides that in the event of violation of that undertaking by Commonwealth, Safeguard would not be relieved of liability to bondholders. The court's interpretation of the instrument was confirmed, in a sense, by the conduct of defendant's Secretary. There was a substantial exchange of correspondence over an extended period of time between Mr. Weiner, Secretary of Safeguard Mutual, and Mr. Gilbert, during which no question was ever raised about the validity of the bonds, although photostatic copies of the bonds had been in Safeguard's possession from the very beginning. It would appear from defendant's failure to note lack of proper validation or any other defect, that the bonds were regarded by defendant as validly issued.

3. *The Court erred in admitting the Certificates of Insurance into evidence.*

Although defendant admitted that Sydney O. Snitzer was authorized to sign Certificates of Insurance, it contends that the court erred in admitting the Certificates into evidence because Snitzer's signature had not been properly authenticated. Plaintiffs' proof consisted, in part, of the cross-examination of Mr. Weiner.

"BY MR. BAYER:

Q. I show you P–23 (sic).
Could you identify those signatures?

A. No, I can't.

Q. Which one are you looking at? P–2 or P–3?

A. I am looking at both. Both of them are different.

Q. Can you identify either the P–2 or P–3 signature?

A. No, sir.

Q. Do you recall being in my office on June 28, 1971, for the purpose of depositions?

A. I do.

Q. On page 10, do you recall I asked you a question:

'I call your attention to the signature on that. Are you familiar with the signature of Sydney O. Snitzer?

A Yes, that is Snitzer's signature.'

A. No. You didn't show me these certificates. You showed me a photostat.

Q. I show you a photostat of P–2.
THE COURT: Please mark it. It will be P–29.

(Photostatic copy of Exhibit P–2 was marked Exhibit P–29 for identification.)

BY MR. BAYER:

Q. I show you P–29. Can you identify the signature on that?

A. No, I can't.

Q. Now I call your attention to the deposition. On page 9 I showed you Exhibit C which was attached to the complaint, of which that is a photostatic copy, and I asked you,

'I call your attention to the signature on that. Are you familiar with the signature of Sydney O. Snitzer?

'A Yes, that is Snitzer's signature.'

Do you recall making that statement?

A. Could be.

Q. So that this is Mr. Snitzer's signature on there; is that right?

A. No, it is not. I don't know whether it is his signature or not. It looks like it.

Q. It looks like Mr. Snitzer's signature?

A. Yes, it looks like Mr. Snitzer's signature, but I couldn't swear that that is his signature.

Q. But back in June of 1971 you made no qualifications as far as identifying his signature, is that right?

A. Could be."

(N.T. 62–64)

■■ This was sufficient evidence as to the authenticity of Sydney O. Snitzer's signature. Contrary to defendant's contention, the jury was not bound to accept Weiner's in court testimony as to his inability to identify Snitzer's signature. Moran v. Pittsburgh-Des Moines Steel Co., *supra*. The testimony of Weiner taken on deposition before trial was admissible as substantive evidence of authenticity. Pfotzer v. Aqua Systems, Inc., 162 F.2d 779 (2d Cir. 1947). See also Community Counseling Service, Inc. v. Reilly, 317 F.2d 239 (4th Cir. 1963); Kerr v. Clements, 148 Pa.Super. 378, 25 A.2d 737 (1942). The cases cited by defendant are inapposite. "We do not have here a case in which a party calls a supposedly favorable witness who gives unfavorable testimony." Moran v. Pittsburgh-Des Moines Steel Co., *supra*, 183 F.2d at p. 471.

4. *The Court erred in permitting plaintiffs to reopen their case at the aborted first trial.*

■ ■ Defendant's final ground is that the court erred, at the first trial, when it permitted plaintiffs to reopen their case after the testimony had been concluded. The problem, if any, was mooted when, after leave to reopen had been granted, defendant moved for, and was granted, a mistrial because plaintiff, Harry Gilbert, had talked to a juror during the recess preceding the reopening. The only point that could possibly

be urged with regard to that now is that defendant would have been entitled to entry of judgment in its favor on the state of the record as it existed before leave to reopen was granted. Since, however, defendant had not filed a motion for directed verdict pursuant to Rule 50, F.R. C.P., it would not have been entitled to entry of judgment n. o. v. in any event. Beebe v. Highland Tank and Manufacturing Company, 373 F.2d 886 (3d Cir.), cert. denied, National Molasses Co. v. Beebe, 388 U.S. 911, 87 S.Ct. 2115, 18 L. Ed.2d 1350 (1967).