William G. BARNHART, and George S. Barnhart, doing business as W & G Associates, a partnership, Appellees,

v.

DOLLAR RENT A CAR SYSTEMS, INC., Appellant.

No. 78–1749.

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1979.

Decided March 27, 1979.

---

Peter G. Loftus, Oliver, Price & Rhodes, Scranton, Pa., for appellees.

Theodore F. Schwartz, Barry S. Ginsburg, Clayton, Mo., Gilbert E. Petrina, Harrisburg, Pa., for appellant.

Before SEITZ, Chief Judge, and GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Defendant Dollar Rent A Car Systems, Inc., (Dollar) appeals from a judgment of

$15,000 entered against it by the district court. Dollar contends only that the district court erred in refusing to reduce this judgment by $14,777.14 allegedly owed to Dollar by plaintiffs.

## I

Many of the essential facts in this case are uncontested. Late in 1975 plaintiffs William G. Barnhart and George S. Barnhart, doing business as W & G Associates, contacted Dollar about the possibility of opening a Dollar franchise at the Scranton/Wilkes-Barre Airport in Pennsylvania. During the ensuing negotiations, Dollar suggested that the Barnharts also take over the existing Dollar franchise at the Allentown/Bethlehem/Easton Airport in Pennsylvania.

On April 21, 1976, Dollar granted the Barnharts an option to enter into a franchise agreement for the two locations. On April 29, 1976, George Barnhart contacted Robert Pettinato, Chairman of the Scranton/Wilkes-Barre Airport Authority, and requested space in the terminal to open a Dollar franchise. Pettinato responded on May 12 that the request would be submitted at the next meeting of the Board, but that a similar request had been denied earlier due to a shortage of parking.

Nevertheless, on June 4, 1976, the Barnharts and Dollar entered into a licensing agreement covering both the Scranton location and the Allentown location. The standard-form contract provided, inter alia, that the Barnharts would indemnify Dollar for "any claims, demands, liabilities, suits, or expenses of any kind arising out of Licensee's Vehicle Renting Business." The agreement also included an addendum, signed by all parties, providing (1) that the entire contract was contingent upon Dollar "insuring [that] the concession rights will be obtained" at the Scranton/Wilkes-Barre Airport within 120 days of the signing of the agreement; (2) that the Barnharts would pay Dollar a total of $27,500 for the franchises, with $15,000 payable upon the signing of the agreement; and (3) that the Barnharts would take possession of the Allentown location no later than July 1, 1976. Pursuant to the addendum, the Barnharts advanced $15,000 to Dollar.

On June 17, 1976, Gary L. Paxton, Dollar's representative, and George Barnhart met with James P. Flannery, the manager of the Scranton/Wilkes-Barre Airport. During a tour of the facilities, Flannery explained that the terminal could not accommodate another tenant at that time. He asserted, however, that a planned expansion of the baggage-claim area would open adequate space for an additional rent-a-car franchise. Paxton testified at trial that he (Paxton) pulled Barnhart aside and discussed the possibility of delaying the opening of the Scranton franchise until the new area was completed, perhaps as late as the spring of 1977. Barnhart allegedly agreed, noting that he could gain valuable experience in Allentown before opening in Scranton. According to Barnhart, however, neither Paxton nor Flannery mentioned any timetable for the proposed expansion, leaving Barnhart with the impression that Paxton still intended to obtain space by October 2, 1976, the end of the 120-day period.

On June 21, 1976, Paxton wrote to Flannery and, "[p]er our discussion," formally requested space for a rent-a-car counter "upon beneficial occupancy of your expanded baggage claim area." The Barnharts received a copy of this letter and made no objection to the request on their behalf.

In late June the Barnharts received a call from Woody Francis, a Dollar official, reminding them that they had to move into the Allentown Airport by July 1. Francis told the Barnharts that other people had expressed an interest in the Allentown franchise. The Barnharts confirmed their intention to operate the Allentown franchise and took possession of Dollar's counter at that airport on July 1, 1976. Their employees answered the phone and took out-of-town reservations. They were unable to offer automobiles for hire because of an inability to insure their operation. Under the lease with the airport authority, Dollar had assumed primary liability for any rent payable for the counter. During their occu-

pancy, the Barnharts paid no rent to either Dollar or the airport authority.

On August 4, 1976, Flannery wrote to George Barnhart in response to Paxton's letter of June 21. Flannery again noted that the present terminal at Scranton could not accommodate Dollar. He informed Barnhart that the Airport Board had decided to table Dollar's application for space until completion of the new baggage-claim area, estimated to take seven to nine months. Flannery asserted, however, that the application "probably will be favorably considered" at that time.

Upon receipt of this letter the Barnharts notified Dollar that they wished to rescind the original agreement in light of Dollar's apparent inability to secure space at Scranton by October 2. Dollar responded that it had not breached the agreement, as amended on June 17, and that it would hold the Barnharts liable for any expenses resulting from improper termination of the contract. On September 24, 1976, the Barnharts vacated the Allentown location. Under its lease with the Allentown Airport Authority, Dollar found itself obligated to pay $14,-777.14 in rent for the period from June 1976 through December 1976.

The Barnharts filed this diversity action seeking recovery of the $15,000 they had advanced to Dollar. In its answer Dollar claimed a set-off of $14,777.14 against any amount owed to the Barnharts. At the close of the evidence, the jury returned a special verdict on twelve questions submitted by the district court. After reviewing the answers to those questions, the district court denied Dollar its set-off and entered judgment for the Barnharts in the amount of $15,000.

## II

At issue in this case is the correct interpretation and weight to be given the jury's answers to several of the interrogatories included in the special verdict. The relevant questions and responses were:

\*   \*   \*   \*   \*   \*

6. Did the Barnharts and Dollar Rent A Car Systems, Inc. agree that the license agreement would not be effective unless Dollar Rent A Car Systems, Inc. obtained concession rights for the Barnharts by October 2, 1976 at the Scranton-Wilkes-Barre International Airport?

<u>Yes</u>

7. Did the Barnharts agree to pay rent to Dollar Rent A Car Systems for facilities at the Allentown Airport?

<u>Yes</u>

8. If your answer to the previous question is yes, did the Barnharts agree to pay rent for facilities at the Allentown Airport to Dollar Rent A Car Systems, Inc. irrespective of whether the Dollar Rent A Car Systems, Inc. provided the car rental concession at the Scranton-Wilkes-Barre International Airport?

<u>Yes</u>

9. What amount of money did Dollar Rent A Car pay to the Airport Authority at Allentown as a result of the Barnharts' relinquishment of the facilities there?

<u>$14,777.14</u>

"Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Here, the jury's responses to questions six and eight appear at first glance, to conflict. The jury found that the parties agreed to condition the effectiveness of the license agreement on Dollar's securing the Scranton concession, but it also found that the Barnharts agreed to pay rent in Allentown regardless of the availability of the Scranton facilities. The district court's sketchy instructions, which are not challenged in this appeal by either party, offer us no assistance in reconciling these answers.

■ After reviewing the record, however, we believe that a consistent reading is possible. As asserted by Dollar, the jury could have decided that question six re-

ferred to the written contract, while question eight referred to the agreement after the alleged oral modification on June 17, 1976. If the jury accepted Dollar's claim that George Barnhart orally agreed to operate the Allentown concession even though the Scranton concession might not have been available until the spring of 1977, the inconsistency between the two answers disappears. Although question eight does not specifically refer to the alleged oral modification, neither the district court nor the Barnharts have suggested any alternative interpretation that would harmonize the answers to questions six and eight.

In denying Dollar its requested set-off, the district court offered three explanations for refusing to credit the jury's answer to question eight: (1) that, under Pennsylvania law, the interpretation of a written contract is a matter of law for the court to decide; (2) that, even if the answer to question eight is read as a factual finding that the parties orally modified their written contract, there was no support in the record for such a finding; and (3) that the burden of requesting clarification of an ambiguous finding of fact rests upon the complaining party, and such request must be made while the jury remains impanelled.

## A.

Five days after the jury had returned its verdict, the district court issued an opinion in which it concluded that interpretation of the contract between the Barnharts and Dollar was a matter of law for the court and not for the jury. *See Filler Products, Inc. v. Pilgrim Food Products Co.*, 381 Pa. 394, 113 A.2d 219 (1955). Examining the license agreement, it decided that the parties had made retention of the Scranton concession a condition precedent to the Barnharts' obligations under the contract. Furthermore, the court did not accept Dollar's contention that the Barnharts had waived that condition.

Dollar concedes that the written license agreement and its addendum unambiguously made retention of the Scranton concession a condition precedent to the Barnharts'

contractual obligations. But the district court erred, according to Dollar, in treating the existence of the alleged oral modification as a question of law rather than a question of fact.

■ Under Pennsylvania law, "[w]here there is a dispute as to which set of several circumstances, some expressed in writing and some oral, constitute the agreement between the parties it is the jury's function and not the court's to determine which set of circumstances constitutes the true agreement." *Gilbert v. Safeguard Mutual Insurance Co.*, 345 F.Supp. 732, 734 (E.D.Pa.1972) (collecting Pennsylvania cases), *aff'd*, 481 F.2d 1398 (3d Cir. 1973). *See also Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325, 332 (E.D.Pa.1973), *aff'd*, 493 F.2d 1400 (3d Cir. 1974). Applying this precept, we believe that Dollar's allegation of an oral modification or waiver of the written condition precedent was sufficient to convert the interpretation of the true agreement into a question of fact.

## B.

■ In holding that there was no evidence in the record to support an oral waiver of the condition precedent, the district court dismissed the testimony of Gary Paxton: "Paxton's testimony did not relate to [question eight]. Paxton contended not that an exception to the condition precedent was made for the payment of rent for facilities at the Allentown Airport but that the entire condition precedent was waived or delayed." We believe, however, that waiver of the entire condition precedent would activate all the Barnharts' contractual obligations, including the duty to pay rent for the Allentown facility. Such a general waiver might well have given Dollar more contractual rights than Dollar chose to assert in this suit. Nevertheless, Dollar's decision to pursue only the Barnharts' duty to pay rent should not limit its ability to rely upon that waiver.

■ Nor are we persuaded that Dollar had to prove, through Paxton's testimony, that the Barnharts permanently abandoned

any claim to the Scranton franchise. According to Paxton, George Barnhart agreed to postpone the opening at Scranton until the baggage-claim area was completed, perhaps as late as the spring of 1977. Nevertheless, the Barnharts abrogated the agreement upon receiving Flannery's letter, which was completely consistent with the alleged modification. If Paxton's testimony is correct, the Barnharts' abandonment of the Allentown facility placed them in total breach of contract on September 24, 1976. Dollar's subsequent failure to secure a concession contract from the Scranton Airport Authority is irrelevant.

■ Having concluded that Paxton's testimony was sufficient to raise a question of fact for the jury, we must determine whether the oral modification, if proven, could be binding on the Barnharts. We note that the licensing agreement included a clause that barred modification except in writing. The Pennsylvania courts have held, however, that oral modification of a written contract is valid despite the existence of such a provision. *See Wagner v. Graziano Construction Co.*, 390 Pa. 445, 136 A.2d 82 (1957). Furthermore, although Pennsylvania law requires additional consideration or reliance to support a contractual modification, *see Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968); *General Electric Co. v. N. K. Ovalle, Inc.*, 335 Pa. 439, 445, 6 A.2d 835, 838 (1939), the Barnharts have not argued, either in this appeal or before the district court, that the alleged modification fails for lack of such support. The record contains ample evidence that Dollar, acting at the Barnharts' behest, turned down other potential franchisees for the Allentown facility, thereby incurring liability for $14,777.14 in rent.

#### C.

■ Finally, the district court asserted that Dollar's failure to request clarification of the special verdict while the jury remained impanelled bars its claim for a set-off. We cannot agree. As we have noted, the jury's findings are susceptible of only one internally consistent interpretation.

When the jury was dismissed Dollar was justified in believing that the jury had found an oral modification of the original contract. The district court's refusal, five days later, to credit the jury's answer to question eight apparently was the first indication to Dollar that the court believed the determination to be one of law.

#### III

■ Because a court must interpret a jury's findings of fact as consistent whenever possible, we believe that the district court erred in shaping its judgment in this case. The jury necessarily found that Dollar was entitled to its claimed set-off. We therefore will vacate the judgment of the district court and will remand the case for entry of judgment in favor of plaintiffs in the amount of $222.86.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.

As the majority recognizes, the written agreement of June 4, 1976 between Dollar Rent A Car Systems, Inc. and the Barnharts established a condition precedent to the Barnharts obligation to make *any* performance under the contract. The condition precedent is that Dollar obtain concession rights for the Barnharts at the Scranton-Wilkes-Barre Airport within 120 days of the signing of the agreement. The majority construes the jury's answers to the special interrogatories as a finding that the parties orally modified the agreement so as to completely waive the condition precedent. Because I agree with the district court that the evidence does not support the finding that the agreement was modified to that effect, I dissent. Even if the evidence were to support the finding, I believe a remand would be necessary to determine whether, as a factual matter, Dollar relied to its detriment on the modification.

The only testimony pointed to by the majority to support the finding that the condition precedent was waived is that of Gary Paxton, Dollar's representative. That testimony concerned a meeting in the Scranton-Wilkes-Barre Airport on June 17,

1976 which was attended by Mr. Paxton, George Barnhart, James Flannery, airport manager of the Scranton-Wilkes-Barre Airport, and a Mr. Centini whose exact position is not apparent from the record.

Mr. Paxton stated:

[T]he meeting between Mr. Flannery, Centini, Barnhart and myself in Flannery's office, this meeting lasted approximately, I would guess, an hour or an hour and a half, and the meeting wasn't limited to those four walls where we are walking around the terminal building, through the whole thing looking for a place where we can put a counter.

Just after the roving discussion among the four men, Mr. Paxton testified that he spoke separately with Mr. Barnhart in the hall and told him that, based on what Mr. Flannery had said, the Scranton-Wilkes-Barre Airport concession would not be available before September of that year and perhaps not until the spring of the following year. According to Mr. Paxton, "George's response was he was starting July 1 in Allentown. He didn't have much experience from the rent a car business, [sic] and it might be best to get that one going and then proceed in Wilkes-Barre."

This last excerpt from Mr. Paxton's testimony is the only evidence that the Barnharts agreed to any modification of the prior written agreement. I believe that this testimony could support a finding that Mr. Barnhart agreed to give Dollar more time to obtain the Scranton-Wilkes-Barre Airport concession than the 120 days allowed in the written agreement. I believe, however, that this testimony cannot support a finding that Mr. Barnhart agreed to waive the condition precedent *entirely.* Even according to Mr. Paxton's testimony, it is clear that Mr. Barnhart contemplated operating a concession at both airports when he stated that "it might be best to get that one [Allentown] going and then proceed in Wilkes-Barre." Nowhere in the record is there any indication that the Barn-

harts agreed to waive the provision of the June 4, 1976 contract which makes the entire license agreement contingent upon Dollar's obtaining concession rights at the Scranton-Wilkes-Barre Airport. At most, the record supports an agreement to extend the time by which the concession may be obtained.[1] An extension is not the equivalent of a waiver and I do not believe it is proper here to uphold the finding of the latter from evidence of the former. Therefore, I believe the court below properly held as a matter of law that Barnhart was not obligated to pay Dollar for the rent Dollar had paid at the Allentown Airport. The jury's contrary finding, as expressed in its answer to Interrogatory No. 8, is not supported by any evidence and therefore should be rejected.

As the majority recognizes, even if there were an oral modification waiving the condition precedent, that modification would be of no effect unless it were supported by consideration or a substitute for consideration. The majority finds that Dollar relied to its detriment on this modification by passing up offers from other parties who wished to operate a Dollar Rent A Car concession at the Allentown Airport. Although there certainly is evidence to support such a finding, this finding was never made below. Where special interrogatories are submitted and no general verdict is rendered by the jury, the district court may make factual findings as to issues of fact not submitted to the jury. *See* F.R.C.P. 49(a). The issue of detrimental reliance was neither submitted to the jury nor resolved by the district court. Thus even if the finding of a waiver were adequately supported, a remand would be necessary for a factual determination as to whether Dollar relied to its detriment on the waiver.

---

1. The jury, in its answer to Interrogatory No. 1, found that Dollar could not at any time have obtained such a concession for the Barnharts.